**THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

---

|  |  |
|---|---|
| **ORACLE CORPORATION,**<br><br>               **Plaintiff,**<br><br>    **v.**<br><br>**CHARTIS SPECIALTY INSURANCE COMPANY,**<br><br>               **Defendant.** | Civil Action No. 1:18-cv-3440 (GHW)<br><br>**ORAL ARGUMENT REQUESTED** |

---

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

Robin L. Cohen
(rcohen@mckoolsmith.com)
Adam S. Ziffer
(aziffer@mckoolsmith.com)
Jillian M. Raines
(jraines@mckoolsmith.com)
One Bryant Park, 47th Floor
New York, NY 10036
Telephone: (212) 402-9400
Facsimile:  (212) 402-9444

*Attorneys for Plaintiff Oracle Corporation*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

STATEMENT OF UNDISPUTED FACTS .................................................................................3

      A.     The AIG Follow Form Policy ...............................................................................3

      B.     The Underlying Actions.........................................................................................5

      C.     AIG Denies Coverage for the OFCA Claims .......................................................7

ARGUMENT ................................................................................................................................8

I.      THE STANDARDS APPLICABLE TO THIS MOTION .................................................8

      A.     Standards Applicable to Motion for Judgment on the Pleadings............................8

      B.     Standards Applicable to the  Interpretation and
              Application of Insurance Policy Language.............................................................9

II.     THE DEFENSE AND SETTLEMENT OF THE OFCA CLAIMS FALLS
       WITHIN THE COVERAGE GRANT UNDER THE AIG EXCESS POLICY...............10

      A.     Coverage Is Not Limited to Negligent Misstatements or
              Misleading Statements ..........................................................................................11

      B.     The OFCA Claims Fall Within The Policy's Coverage Grant Even If
              Limited To Claims For Negligence Because The OFCA Claims
              Do Not Require Proof Of Intentional Conduct .....................................................14

CONCLUSION.............................................................................................................................18

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AIU Ins. Co. v. Superior Court*,
    799 P.2d 1253 (Cal. 1990) ...............................................................................9

*American Auto Ins. Co. v. Murray*,
    2008 U.S.Dist. LEXIS 101543 (E.D. Pa. Dec. 15, 2008) ......................................12

*Bank of N.Y. v. First Millennium, Inc.*,
    607 F.3d 905 (2d Cir. 2010)................................................................................8

*Braden Partners, LP v. Twin City Fire Ins. Co.*,
    No. 14-CV-01689-JST, 2017 WL 63019 (N.D. Cal. Jan. 5, 2017), appeal
    dismissed, No. 17-15136, 2017 WL 3160295 (9th Cir. May 9, 2017) ..................17

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002)............................................................................6, 7

*Davis v. Am. Optical Corp.*,
    No. 11-CV-562S, 2012 WL 639698 (W.D.N.Y. Feb. 27, 2012)...............................9

*Downey Venture v. LMI Ins. Co.*,
    66 Cal. App. 4th 478 (3d Div. 1998) ..................................................................15

*Golf Course Superintendents Ass'n v. Underwriters at Lloyd's, London*,
    761 F. Supp. 1485 (D. Kan. 1991).......................................................................12

*Harris v. Mills*,
    572 F.3d 66 (2d Cir. 2009).................................................................................9

*Haynes v. Farmers Ins. Exch.*,
    89 P.3d 381 (Cal. 2004) ....................................................................................9

*Juster Assocs. v. Rutland*,
    901 F.2d 266 (2d Cir. 1990)...............................................................................8

*L-7 Designs, Inc. v. Old Navy, LLC*,
    647 F.3d 419 (2d Cir. 2011)............................................................................6, 7

*Mirpad, LLC v. California Ins. Guar. Assn.*,
    132 Cal. App. 4th 1058 (2d Dist. 2005).............................................................9, 13

*Montrose Chem Corp. v. Admiral Ins. Co.*,
    35 Cal. App. 4th 335 (2d Dist. 1992)...................................................................11

*Office Depot, Inc. v. AIG Specialty Ins. Co.*,
    722 F. App'x 745 (9th Cir. 2018) ..........................................................................2, 15, 16, 17

*Pension Trust Fund v. Federal Ins. Co.*,
    307 F.3d 944 (9th Cir. 2002) ...............................................................................................11

*Royalty Carpet Mills, Inc. v. ACE Am. Ins. Co.*,
    No. 16 Civ. 0648, 2017 WL 4786107 (C.D. Cal. July 17, 2017), *modified in*
    *part on reconsideration*, No. 16 Civ. 0648, 2017 WL 5714726 (C.D. Cal.
    Aug. 8, 2017) .......................................................................................................................17

*Safeco Ins. Co. of Am. v. Robert S.*,
    28 P.3d 889 (Cal. 2001) .................................................................................................13, 14

*Shell Oil Co. v. Winterthur Swiss Ins. Co.*,
    12 Cal. App. 4th 715 (1st Div. 1993) ............................................................................14, 15

*Siebert v. Gene Sec. Network, Inc*,
    75 F. Supp. 3d 1108 (N.D. Cal. 2014) .................................................................................14

*State Farm Mut. Auto. Ins. Co. v. Partridge*,
    514 P.2d 123 (Cal. 1973) .......................................................................................................9

**Statutes**

Cal. Ins. Code § 533 ..................................................................................................14, 15, 16

California False Claims Act § 12650(b)(3) .................................................................................16

California False Claims Act § 12651(a)(1), (2) ..........................................................................16

31 U.S.C.A. § 3729 (Federal False Claims Act) ........................................................................16

Or. Rev. Stat. Ann. § 180.755 (1)(a), (b) ....................................................................................5

Or. Rev. Stat. Ann. § 180.755(2), (3) ........................................................................................15

Or. Rev. Stat. Ann. § 180.760 ...................................................................................................15

**Other Authorities**

Fed. R. Civ. P. 12(c) ................................................................................................................1, 8

Fed. R. Civ. P. 12(b)(6) ..............................................................................................................8

Plaintiff Oracle Corporation ("Oracle"), by and through its undersigned counsel, submits this memorandum of law in support of its motion for partial judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).  Judgment should be entered in favor of Oracle on its claim that the claims alleged against Oracle under the Oregon False Claims Act ("OFCA") in the underlying action fall within the scope of the insuring agreement of the excess liability insurance policy sold by Defendant Chartis Specialty Insurance Company ("AIG").

## PRELIMINARY STATEMENT

This action involves Oracle's claim for coverage for the costs it incurred in defending and settling claims made by the State of Oregon in connection with Oracle's provision of software and professional services to the State.  The primary insurer on the risk, Beazley,[1] paid out the full limits of its policy.  But when Oracle turned to excess insurer AIG – which sold Oracle a "follow form" excess policy designed to provide seamless coverage with the Beazley primary coverage – AIG denied that the costs were covered under the AIG policy.  In particular for purposes of this motion, AIG contends that claims asserted under the OFCA are not covered under the Beazley/AIG policy language because it provides coverage only for negligent conduct and unintentional breaches of contract, and OFCA claims are not premised on negligent conduct.

AIG is wrong, both about the scope of the policy coverage, and the nature of liability under the OFCA.  As an initial matter, the plain language of the policies' insuring agreement provides coverage not only for liabilities arising from "any negligent act, error or omission," or "unintentional breach of contract" but also from "misstatements or misleading statements."  That language is in contrast to policies in use by the industry that separately apply the word "negligent" separately not only to "acts, errors or omissions," but also to "misstatements or

---

[1] "Beazley" refers to Certain Underwriters at Lloyd's Syndicates 623 and 2623, subscribing to Policy No. QF009013.

misleading statements."  At a minimum, the absence of the term "negligent" before the grant of

coverage for liabilities arising from misstatements or misleading statements creates an ambiguity

which must be construed in favor of coverage.

Further, even if AIG had limited the policy's coverage to "negligent misstatements or

misleading statements" (it did not), the OCFA claims still fall within that coverage as a matter of

law.  Under well-established California law,[2] a policy providing coverage for liabilities arising

from negligent conduct includes coverage for claims asserting gross negligence and recklessness.

By its express terms, the OFCA provides that a party may be held liable for statements and

claims made in reckless disregard of their truth or falsity – and the underlying OFCA claims

specifically allege just such reckless conduct on the part of Oracle.  Under the most recent Ninth

Circuit authority, *Office Depot, Inc. v. AIG Specialty Ins. Co.*, 722 F. App'x 745, 746 (9th Cir.

2018), claims brought under False Claims Acts do not necessarily require proof of intentional or

willful conduct, and therefore such claims are potentially covered under liability insurance

policies.

Moreover, none of the exclusions cited by AIG in its coverage denial are applicable to

Oracle's costs of defending and settling the OFCA claims.  Indeed, Exclusion A to the Primary

Policy, which provides that liabilities for dishonest, fraudulent, or malicious acts committed by

any Insured are excluded only when such acts have been established by a final adjudication,

confirms that the insuring agreement extends to claims alleging intentional misstatements or

misleading statements which do not result in such final adjudications or judgments.  In this case,

there will be no final adjudication required to invoke Exclusion A, because Oracle settled the

OFCA claims without any admission of liability

---

[2] The Primary Policy contains a California choice-of-law provision and there appears to be
no dispute between the parties that California law governs the substantive issues of policy
construction.

In short, the OCFA claims fall within the express grant of coverage set forth in the insuring agreement, and are not subject to any relevant policy exclusion.  Accordingly, as a matter of law, Oracle is entitled to judgment holding that the follow-form AIG excess policy provides coverage for the costs of defense and settlement of those claims.

## STATEMENT OF UNDISPUTED FACTS

### A.     The AIG Follow Form Policy

In consideration of the payment of substantial premiums, AIG sold Oracle an excess insurance policy covering claims made against Oracle during the period from March 31, 2013 to March 31, 2014 (the "AIG Excess Policy").  (Compl. at 15; Ans. at 15.)[3]  As part of what was intended to be a seamless insurance program, the AIG Excess Policy followed form to the Beazley primary policy covering the same period (the "Primary Policy"), meaning that, with the exception of the policy attachment points and limits, the AIG Excess Policy incorporates and adopts the terms, conditions, definitions and exclusions of the Primary Policy.  (Compl. at 17-18; Ans. at 17-18.)

The Primary Policy Insuring Agreement expressly provides coverage for amounts which Oracle becomes legally obligated to pay because of a Claim arising out of:

> any negligent act, error or omission, misstatement or misleading statement or any unintentional breach of contract, in rendering or failure to render Professional Services or Technology Based Services

(Compl. at 19; Ans. at 19.)  "Claim" includes "a written demand received by any Insured for money or services, including the service of suit or institution of arbitration proceedings."

(Compl. at 21; Ans. at 21.)

---

[3] "Compl." refers to Oracle's Complaint filed in this action (Dkt. # 1) and "Ans." refers to AIG's Answer filed in this action (Dkt. #26).

The Primary Policy provides coverage for both "Damages," which expressly includes "a monetary judgment award or settlement" and "Claims Expenses." (Compl. at 22-24; Ans. at 22-24.) Claims Expenses include all "reasonable and necessary fees charged by" an attorney designated in accordance with the Policy, as well as "all other fees, costs and expenses resulting from the investigation, adjustment, defense and appeal of a Claim, suit or proceeding arising in connection therewith, or circumstance which might lead to a Claim, if incurred by the Underwriters, or by the Insured in accordance with Clause II.A." (Compl. at 22; Ans. at 22.) The Policy further provides that the insurer "shall advance, on behalf of the Insureds, Claims Expenses which the Insureds have incurred prior to the final disposition of such Claim . . . for any Claim against the Insured seeking Damages which are payable under the terms of this Policy." (Compl. at 23; Ans. at 23.) Further, Exclusion A to the Primary Policy excludes coverage for Claims Expenses or Damages "arising or resulting from any criminal (except where such criminal act is based on unintentional conduct) dishonest, fraudulent or malicious act error or omission committed by any Insured," but carves out from this exclusion coverage for:

> Claims Expenses incurred in defending any such Claim alleging the foregoing until such time as there is a final adjudication, judgment, binding arbitration decision or conviction against the Insured, or written admission by the Insured, establishing such conduct, at which time the Named Insured shall reimburse the Underwriters for all Claims Expenses incurred defending the Claim….

(Dkt. # 1, Ex. A, pg. 17; Exclusion A to the Primary Policy.)

## B.    The Underlying Actions

Between 2010 and 2014, Oracle incurred Claims Expenses and Damages in various lawsuits arising from Oracle's work performed for the State of Oregon in connection with (1) Oregon's healthcare insurance exchange run by the Oregon Health Insurance Exchange

Corporation,[4] and (2) a related project to modernize Oregon's health and human services IT systems (collectively, the "Cover Oregon Lawsuits"). (Compl. at ¶ 2.) The principal action, *Rosenblum, et al. v. Oracle America, Inc., et al.*, Case No. 14 CV 20043 (Or. Cir. Ct., Marion Cnty.) (the "State Action"), was filed in August 2014 in the Circuit Court of Marion County. The State Action Complaint alleged various causes of action, including breach of contract, fraud, and violation of the Oregon Racketeer Influenced and Corrupt Organization Act ("Oregon RICO") against Oracle and certain of its directors and officers who are Insureds under the Primary and AIG Excess Policies.

In addition, seven of the fourteen causes of action set forth in the State Action Complaint asserted claims under the sections of the OFCA which provide that a person may not "[p]resent for payment or approval, or cause to be presented for payment or approval, a claim that the person knows is a false claim" or, in the course of presenting such a claim "make or use, or cause to be made or used, a record or statement that the person knows to contain, or to be based on, false or fraudulent information." Or. Rev. Stat. Ann. § 180.755 (1)(a), (b). In support of those claims, the State Action Complaint repeatedly alleges that one or more of the defendants knowingly *or recklessly* made false statements or claims regarding its work for the state. Those allegations include:

> 127. . . . [Oracle's Technical Manager] knew or recklessly disregarded that the core functionalities he was demonstrating [to the State] were not complete and were not in a state of completion that would allow them to launch in October

> \* \* \*

> 130. . . . [Oracle's Vice President] knew or recklessly disregarded that the state of development on the HIX-IT Project would make it impossible to launch the system according to Cover Oregon's plan

---

[4] The Oregon Health Insurance Exchange Corporation (d/b/a Cover Oregon) was a public corporation created by the Oregon legislature to run the State's healthcare insurance exchange.

* * *

136.  . . . At the time he made each of these statements, [Oracle's Vice President] knew or recklessly disregarded that given the current state of development of the HIX-IT Project it could be impossible for the system to launch on the dates he told [the State]

* * *

143. . . .  At the time [Oracle's Vice President] made these statements, he knew or recklessly disregarded that Oracle had not resolved all "blockers" and the state of the development of the system made it impossible to launch the HIX on February 3, 2014

144. . . . At the time [Oracle's Vice President] demanded payment [from the State] he knew or recklessly disregarded that the work Oracle was claiming payment for was not new development work, but was repair work that was covered by warranty

* * *

180.    Oracle either knew that its representations were false or recklessly disregarded the truth or falsity of its representations.

(Ex. A ¶¶ 145-147, 199, 215, 236, 243, 252, 257, 264, 272.) [5]

### C.    AIG Denies Coverage for the OFCA Claims

In August 2014, AIG issued a reservation of rights letter to Oracle with respect to the Cover Oregon Lawsuits, acknowledging that the AIG Excess Policy followed form to the Primary Policy, requesting coverage communications from the primary carrier Beazley, and reserving all rights.  (Compl. ¶ 46.)  That letter did not raise any specific defense to coverage. (*Id.*)

---

[5] The Complaint in the State Action, attached as Exhibit A hereto, is a publicly filed document, referenced and relied upon in Oracle's Complaint, and was made available to AIG during the claims-handling process, and thus is properly considered in connection with this motion.  *See L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (noting that on a motion pursuant to Fed. R. Civ. P. 12(c), the Court may consider, *inter alia,* any matter of which the court may take judicial notice, materials incorporated by reference in the complaint, and documents that are "integral" to the complaint); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

In September 2016, Oracle entered into a settlement of the State Action which included, among other terms, cash settlement payments by Oracle in the amount of $35 million. The settlement did not include any admission of liability by Oracle. Soon after the settlement of the State Action, all of the remaining Cover Oregon Lawsuits were dismissed. Less than two months after the settlement was finalized, in December 2016, Beazley agreed to pay Oracle its full policy limit under the Primary Policy. (Compl. ¶ 56.)

Upon exhaustion of the primary limits, Oracle sought coverage from AIG under the follow-form AIG Excess Policy for its Damages and Claims Expenses incurred in connection with the Cover Oregon Lawsuits, including Claims Expenses incurred in connection with the OFCA claims. In a letter dated July 19, 2017, AIG acknowledged that there was a "potential for coverage" for the breach of contract claims alleged in the State Action. (Ex. B.)[6] It further acknowledged that Claims Expenses for the fraud claims alleged in that action "may be reimbursed until such time as there is a final adjudication, judgment or decision establishing that the insured engaged in such conduct." AIG, however, denied coverage for the claims asserted under the Oregon RICO statute both on the ground that those claims were not "premised upon negligence or an 'unintentional' breach of contract" and because Exclusion N of the Primary Policy specifically excludes coverage for claims under the federal RICO statute or any similar state legislation.

AIG also denied coverage for the OFCA claims on the ground that those claims were not "premised upon negligence or an 'unintentional' breach of contract" and, therefore, do not fall

---

[6] This coverage denial letter, written by AIG, is specifically referenced in paragraph 67 of Oracle's Complaint. Further, the content of the letter, which delineates the bases for AIG's denial of Oracle's claim for coverage, is integral to the Complaint and this action. Finally, AIG's Answer expressly incorporates its coverage letters by reference. (Dkt. # 26 at ¶ 13.) Therefore, it may properly be considered on this motion for judgment on the pleadings. *See L-7 Designs, Inc.* 647 F.3d at 422; Chambers, 282 F.3d at 153.

under the insuring agreements of the Primary Policy.  AIG also cited exclusions E, F, G, K, and N of the Primary Policy as bases for denying coverage for the OFCA claims.  AIG incorporated those objections to coverage in its Answer in this action.  (Ans. at ¶ 13, asserting that Oracle's claims "are barred for the reasons set forth in Chartis' coverage letters….")  AIG also asserted for the first time in its Answer that Oracle's claims are barred in whole or in part, by exclusions H-I and L-M of the Primary Policy.  (*Id.* at ¶¶ 3-11.)  AIG did not set forth, in either its denial letter or the affirmative defenses contained in its Answer, the factual basis on which it claimed any of those exclusions applied to the OFCA claims.

Despite admitting that at least some of the claims in the State Action fell within the coverage of the policy, AIG has made no payment to Oracle for its Claims Expenses and settlement of the Cover Oregon Lawsuits, relying, in part, on its denial that the OFCA claims fall within the coverage of the AIG Excess Policy.

## ARGUMENT

## I.   THE STANDARDS APPLICABLE TO THIS MOTION

### A.   Standards Applicable to Motion for Judgment on the Pleadings

A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is evaluated under the same standards as a Rule 12(b)(6) motion to dismiss.  *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010).  Thus, a party is entitled to judgment on the pleadings pursuant to Fed. R. of Civ. P. 12(c), "if it has established 'that no material issue of fact remains to be resolved and that [it] is entitled to judgment as a matter of law.'"  *Juster Assocs. v. Rutland,* 901 F.2d 266, 269 (2d Cir. 1990) (quoting 5 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1368).  A reviewing court must "accept as true all factual allegations in the non-moving party's pleadings, and draw all

reasonable inferences in favor of the party opposing the motion." *Davis v. Am. Optical Corp.*, No. 11-CV-562S, 2012 WL 639698, at *7 (W.D.N.Y. Feb. 27, 2012) (quoting *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010)).  This tenet, however, "is inapplicable to legal conclusions." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citation omitted).

### B.   Standards Applicable to the  Interpretation and Application of Insurance Policy Language

Under California law, a court interpreting an insurance policy should "seek to discern the mutual intention of the parties and, where possible, to infer this intent from the terms of the Policy." *Haynes v. Farmers Ins. Exch.*, 89 P.3d 381, 385 (Cal. 2004).  Insurance policies must be construed as a whole; an interpretation of one provision which renders another "redundant or superfluous violates all rules of construction." *Mirpad, LLC v. California Ins. Guar. Assn.,* 132 Cal. App. 4th 1058, 1073 (2d Dist. 2005). When interpreting a particular policy provision, the court should give "its words their ordinary and popular sense except where they are used by the parties in a technical or other special sense." *Haynes,* 89 P.3d at 385.

Policy language is to be construed so as to effectuate the policyholder's reasonable expectation of coverage.  *AIU Ins. Co. v. Superior Court*, 799 P.2d 1253, 1264 (Cal. 1990).  "Whereas coverage clauses are interpreted broadly so as to afford the greatest possible protection to the insured . . .  exclusionary clauses are interpreted narrowly against the insurer." *State Farm Mut. Auto. Ins. Co.* v. *Partridge*, 514 P.2d 123 (Cal. 1973).  In keeping with that premise, "[a]n insurer cannot escape its basic duty to insure by means of an exclusionary clause that is unclear." *Id.*  Thus, "any exception to the performance of the basic underlying obligation must be so stated as clearly to apprise the insured of its effect." *Id.* (citation omitted).  "The burden of making coverage exceptions and limitations conspicuous, plain and clear rests with the insurer." *Id.* (citation omitted).

## II.   THE DEFENSE AND SETTLEMENT OF THE OFCA CLAIMS FALLS WITHIN THE COVERAGE GRANT UNDER THE AIG EXCESS POLICY

AIG's assertion that claims under the OFCA do not fall within the basic grant of coverage under the Primary Policy, and thus under the AIG Excess Policy, stands on two equally-flawed pillars.  First, AIG asserts that the Policy covers only claims of negligence or unintentional breaches of contract.  Second, it asserts that alleged violations of the OFCA are not premised upon "negligence" or "unintentional" breach of contract.  AIG is wrong on both grounds.

First, under the plain policy language at issue, coverage is not limited to "negligent" misstatements or misleading statements – despite the fact that alternative language was available to the policy drafters which would have limited the coverage in precisely that way.  Accordingly, the grant of coverage, afforded the broad construction appropriate under California law, includes liabilities arising from misstatements and misleading statements without regard to whether they were made negligently.  That conclusion is further compelled by Exclusion A which, while not applicable here, would be wholly superfluous if the Policy applied solely to negligent conduct.

Second, even if the grant of coverage were deemed to be limited to negligent misstatements or misleading statements, that still would not support AIG's assertion that the OFCA claims fall outside the scope of coverage.   Under well-established California insurance law, "negligent" conduct includes claims predicated on gross negligence and/or reckless conduct.  Because liability under the OFCA can be established with reckless conduct, claims thereunder fall within a grant of coverage for liability arising solely from negligence.  Accordingly, as a

matter of law, Oracle is entitled to judgment on the pleadings that the OFCA claims fall within the coverage granted by the AIG Primary Policy.[7]

## A.      Coverage Is Not Limited to Negligent Misstatements or Misleading Statements

As set forth above, under the basic Insuring Agreement of the Primary Policy, incorporated by reference into the AIG Excess Policy, the Policy covers liabilities arising from:

> any negligent act, error *or* omission, misstatement *or* misleading statement *or* unintentional breach of contract

(Compl. at ¶ 19) (emphasis added.)  By the plain rules of grammar and punctuation, the Insuring Agreement thus covers liabilities arising from three groups of conduct:  (1) negligent acts, errors or omissions; (2) misstatements or misleading statements, with no modifier limiting those terms; and (3) unintentional breaches of contract.  That the word "negligent" does not carry through the entire phrase, is reinforced by the drafters' addition of the modifier "unintentional" to limit the scope of coverage for breach of contract claims.  And the inclusion of the word "or" prior to the word "omission," and the comma after that phrase, signifies that omission is the last in the sequence of terms to be modified by the word "negligent."

Under bedrock principles of California insurance law, "the onus is on the drafter to convey any limitations."  *Pension Trust Fund v. Federal Ins. Co.,* 307 F.3d 944, 953 (9th Cir. 2002).  Moreover, "in evaluating the insurer's claim as to the meaning of the language used, the courts necessarily consider whether alternative or more precise language, if used, would have put the matter beyond reasonable question."  *Montrose Chem Corp. v. Admiral Ins. Co.,* 35 Cal.

---

[7] AIG also denied coverage for the OFCA claims based on an unelaborated laundry list of exclusions.  (Ex. B.)  Aside from specific exclusions relating to RICO claims and breach of contract claims the remaining exclusions on which AIG relies are broad-based and would apply, if at all, to all causes of action in the State Action.  AIG's admission that the fraud and breach of contract claims in the State Action Complaint are potentially covered also constitutes an admission that these exclusions do not eliminate coverage for the OFCA claims.

App. 4th 335, 349-50 (2d Dist. 1992) (citation omitted).  Those principles compel the rejection of

AIG's assertion that the grant of coverage is limited to liabilities arising from "negligent"

misstatements or misleading statements, especially in light of other policy language available to

the insurers that would unambiguously have extended coverage only to negligent misstatements

or misleading statements.  *See, e.g. American Auto Ins. Co. v. Murray,* 2008 U.S.Dist. LEXIS

101543, *7 (E.D. Pa. Dec. 15, 2008) (construing policy providing coverage for "any actual or

alleged negligent act, error or omission, **or negligent misstatement or misleading statement**"

as limited to liabilities arising from negligent conduct) (emphasis added); *Golf Course*

*Superintendents Ass'n v. Underwriters at Lloyd's, London*, 761 F. Supp. 1485 (D. Kan. 1991)

(construing policy granting coverage for any "negligent act, error, omission, misstatement or

misleading statement" as extending the modifier "negligent" to the entire *unbroken* sequence of

terms that followed).  Instead, the drafters of the Primary Policy language here chose specifically

to draft the Insuring Agreement in a manner that can reasonably be interpreted to extend to

liabilities arising from misstatements or misleading statements without regard to whether those

statements were negligently made.

That conclusion is further compelled by a review of the policy as a whole, and, in

particular, the terms of Exclusion A of the Primary Policy.  That provision excludes coverage for

liabilities arising from "dishonest, fraudulent or malicious" conduct, but expressly provides for

the payment of Claims Expenses incurred in defending against such claims "until such time as

there is a final adjudication, judgment, binding arbitration decision, or conviction against the

Insured, or written admission by the Insured, establishing such conduct"  (Dkt. # 1, Ex. A, pg.

17; Exclusion A to the Primary Policy.)  Because there has not been – and, in light of the

settlement of the Cover Oregon Lawsuits, never will be – a final adjudication that Oracle

engaged in such conduct, the exclusion is inapplicable to the State Action in general and the

OFCA claims in particular.  Nonetheless, the presence of this exclusion in the Primary Policy,

and thus, the AIG Excess Policy, is inconsistent with the claim that the Policy covers only

negligent conduct, as such a limitation would impermissibly render the exclusion of "dishonest,

fraudulent or malicious" conduct mere surplusage.  *Mirpad,* 132 Cal. Ap. 4th at 1073.  Indeed,

AIG's attempt to avoid coverage for OFCA claims on the ground that they arise solely from

intentional conduct is an impermissible "end run" around Exclusion A's limitation of any such

bar to those cases in which there has been a final adjudication of wrongdoing by the insured.

     There is no dispute that the OFCA claims not only allege, but are based on allegations of

misstatements and misleading statements by Oracle and certain of its officers and directors.

Construing the language of the Insuring Agreement broadly, as required under California law,

whether or not those misstatements and misleading statements were negligently made is

irrelevant to whether the claims fall within the Policy's coverage grant.

### B.    The OFCA Claims Fall Within The Policy's Coverage Grant Even If Limited To Claims For Negligence Because The OFCA Claims Do Not Require Proof Of Intentional Conduct

     Even if the Insuring Agreement could properly be construed to restrict coverage only to

claims of negligent misrepresentation, the OFCA claims would still fall within that grant of

coverage.  California's Supreme Court has expressly declined to draw a distinction between

negligence and gross negligence (which is equated with recklessness) in an insurance policy

unless the policy clearly and unmistakably draws that distinction.  In *Safeco Ins. Co. of Am. v.

Robert S.*, 28 P.3d 889 (Cal. 2001), for example, the policy provided coverage for negligent acts

resulting in bodily harm, but contained an exclusion for "illegal" acts.  When the policyholder's

son shot a neighbor, and was charged with involuntary manslaughter, the insurer denied

coverage.  *Id.* at 892.   The trial court granted the insured's motion for summary judgment, but the Court of Appeal reversed and noted that while the failure to exercise due care would not be "illegal" the "specific act at issue in the present case, involuntary manslaughter, falls into an entirely different category, involving as it did gross negligence and the commission of a punishable, public offense." *Id.* at 894-95.

The California Supreme Court reversed the Court of Appeal.  *Id.* at 896.  It held that the Court of Appeal's determination that the policy covered claims arising from negligence but not gross negligence effectively – and impermissibly – rewrote the terms of the policy to the detriment of the insured.  *Id.* at 895.  It also held that a distinction between ordinary negligence and gross negligence would be inconsistent with §533 of the California Insurance Code, which bars coverage for willful, but not negligent conduct:  "The statute does not distinguish between ordinary and gross negligence. Therefore, an insurer intending to exclude from a homeowner's policy coverage for gross negligence would have to say so in express terms." *Id.*

*Safeco's* recognition that, absent an express exclusion to the contrary, a grant of coverage for negligence is a grant of coverage for gross negligence applies to the OFCA claims alleging reckless conduct, as California courts have equated gross negligence with reckless conduct.  *See Siebert v. Gene Sec. Network, Inc,* 75 F. Supp. 3d 1108, 1117 (N.D. Cal. 2014) (citing *United States v. Krizek*, 111 F.3d 934, 941 (D.C. Cir. 1997) for the proposition that reckless disregard under the FCA is the same as "aggravated gross negligence.").   In particular, in the insurance context, California courts have equated negligent and reckless conduct by distinguishing willful conduct which, under §533 may not be insured, from reckless conduct which falls under the §533 provision that an insurer may not evade liability for the policyholder's negligence.   For example, in *Shell Oil Co. v. Winterthur Swiss Ins. Co.,* 12 Cal. App. 4th 715 (1st Div. 1993), the

court noted that the statutory exclusion of coverage for willful acts was designed to negate the need to parse "degrees" of negligence, and that under the statute's provision that coverage would still be available for negligence, coverage also extended to reckless conduct.  *Id.* at 740; *see also Downey Venture v. LMI Ins. Co.*, 66 Cal. App. 4th 478, 500 (3d Div. 1998) (noting that "[a]cts of gross negligence or recklessness are not willful acts within the meaning of section 533").

Under those standards, Oracle is entitled to judgment that the OFCA claims fall within the grant of coverage even if that grant is limited to negligent misstatements or misleading statements.  Claims under the OFCA do not require proof of a specific intent to defraud or actual knowledge of falsity.  To the contrary, such a violation may be established by proof of unintentional conduct.  *See* Or. Rev. Stat. Ann. § 180.755(2), (3).  Section 180.755(2) provides that a person has "knowledge that a claim, record, statement, document or information is false or fraudulent" if the person:

> (a) Has actual knowledge of the false or fraudulent nature of the claim, record, statement, document or information;
>
> (b) Acts in deliberate ignorance of the false or fraudulent nature of the claim, record, statement, document or information; or
>
> (c) **Acts in reckless disregard of the false or fraudulent nature** of the claim, record, statement, document or information.

(emphasis added).  Moreover, Section 180.755(3) provides that "[i]n an action under ORS 180.760 [the provision providing for a civil action for violations of 180.755], the Attorney General need not prove that a person specifically intended to defraud a public agency to establish that a person acted with knowledge as described in subsection (2) of this section."

The recent case of *Office Depot, Inc. v. AIG Specialty Ins. Co.*, 722 F. App'x 745, 746 (9th Cir. 2018), confirms not only this reading of the plain language of the OFCA, but also that under California law, coverage for claims under that plain language cannot be barred on the

ground that they relate solely to willful or intentional acts. *Office Depot* addressed coverage for claims under the California version of the False Claims Act ("CFCA"). Like the OFCA, the CFCA imposes penalties on any person who "[k]nowingly presents or causes to be presented a false or fraudulent claim for payment or approval" or "[k]nowingly makes, uses or causes to be made or used a false record or statement material to a false or fraudulent claim." CFCA § 12651(a)(1), (2). Also like the OFCA, the CFCA expressly defines "knowingly" to include a reckless disregard for the truth:

> (3) "Knowing" and "knowingly" mean that a person, with respect to information, does any of the following:
>
> > (A) Has actual knowledge of the information.
> >
> > (B) Acts in deliberate ignorance of the truth or falsity of the information.
> >
> > (C) Acts in reckless disregard of the truth or falsity of the information.
> >
> > Proof of specific intent to defraud is not required.

CFCA § 12650 (b)(3).

In *Office Depot*, AIG argued that claims brought under the CFCA could not be covered under a California policy as a matter of California statutory law because they constituted claims of willful or intentional conduct under §533. The District Court agreed, and held that §533 barred coverage for the CFCA claims at issue, granting summary judgment that the insurer had no obligation to defend or indemnify the claims at issue. *Id.* at 746.

The Ninth Circuit reversed. Noting that the statute itself contrasts between "willful" conduct, for which coverage is barred, and "negligent" conduct, for which it is not, the Ninth Circuit held that because the CFCA "requires only 'reckless[ness] regarding the truth or falsity of the information in the claim, and does not require '[p]roof of specific intent to defraud," such claims do not necessarily involve intentional or willful conduct. *Id.* Thus, even if, as AIG

contends, its grant of coverage did not extend to any form of willful or intentional conduct, under *Office Depot,* that would not support the conclusion that the OFCA claims are not included in that grant.

Moreover, consistent with the scope of liability under the OFCA, the State Action is replete with assertions that Oracle and its officers acted "with reckless disregard" of the truth or falsity of their assertions and claims for payment.  (Ex. A at ¶¶ 215, 236, 243, 252, 257, 264, 272.)  Thus, AIG's denial of coverage on the ground that the OFCA claims are not premised upon unintentional conduct flies in the face of the plain terms of the OFCA and the allegations in the State Action Complaint.

Nor can AIG escape its coverage obligations on the ground that claims under the OFCA may *also* be based on intentional conduct AIG asserts is not covered under its Policy, particularly with respect to its defense cost obligations.  Under California law, where a policy provides for the advancement of defense costs and contemplates coverage for *alleged* wrongful acts, that coverage extends to potentially covered – and thus potentially uncovered – claims.  *See Braden Partners, LP v. Twin City Fire Ins. Co.,* No. 14-CV-01689-JST, 2017 WL 63019  (N.D. Cal. Jan. 5, 2017), appeal dismissed, No. 17-15136, 2017 WL 3160295 (9th Cir. May 9, 2017) (policy's provision of coverage for alleged wrongdoing and advancement of defense expenses with possibility of reimbursement only makes sense if coverage obligation extended to potentially covered claims); *Royalty Carpet Mills, Inc. v. ACE Am. Ins. Co.*, No. 16 Civ. 0648, 2017 WL 4786107, at *9 (C.D. Cal. July 17, 2017), *modified in part on reconsideration*, No. 16 Civ. 0648, 2017 WL 5714726 (C.D. Cal. Aug. 8, 2017) (despite policy provisions calling for allocation of defense costs between covered and uncovered claims, policy which purported to cover claims "alleging" wrongful conduct obligated insurer to pay costs incurred in connection with

potentially covered claims).  The Primary and AIG Excess Policies contain just such provisions.
(Dkt. # 1, Ex. A, § II.A (providing for advancement of Claim Expenses); Exclusion A (providing
for payment of Claim Expenses with respect to Claims alleging a fraudulent, dishonest or
malicious act, subject to reimbursement in the event of a final adjudication, judgment or
admission of wrongdoing).)  Accordingly, the operative fact with respect to coverage for the
OFCA claims is that they may be based on conduct falling within the scope of the policy – not
that they also can be based on conduct falling outside that scope.

## CONCLUSION

For the reasons stated,  this Court should grant Oracle's motion for judgment on the
pleadings and find that the OFCA claims against Oracle fall within the grant of coverage under
the AIG Excess Policy.

Dated: July 19, 2018                          McKool Smith, P.C.

By:  _____

Robin L. Cohen
(rcohen@mckoolsmith.com)
Adam S. Ziffer
(aziffer@mckoolsmith.com)
Jillian M. Raines
(jraines@mckoolsmith.com)
One Bryant Park, 47th Floor
New York, NY 10036
Telephone: (212) 402-9400
Facsimile:  (212) 402-9444

*Attorneys for Plaintiff Oracle Corporation*

18

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel of record via the Court's ECF system on July 19, 2018.

/s/ Adam Ziffer