# EXHIBIT B



AIG Property Casualty
Financial Lines Claims
175 Water Street
New York, NY 10038
www.aig.com

Deborah Hirschorn
Complex Claim Director

T  212 458 2185
F  212 298 9054

deborah.hirschorn@aig.com

Correspondence Address:
AIG Property Casualty
Financial Lines Claims
P.O. Box 25947
Shawnee Mission, KS 66225

eMail new notices to
c-Claim@aig.com

Fax new notices to
866 227 1750

July 19, 2017

**VIA ELECTRONIC MAIL**: deborah.miller@oracle.com

Deborah K. Miller
Vice President, Associate General Counsel
Oracle Corporation
500 Oracle Parkway
Redwood City, CA 94065

Re:   Insured:      Oracle Corporation
      Claim:        Cover Oregon
      Policy #:     01-842-68-53
      Claim #:      4326241466US

Dear Ms. Miller:

AIG Claims, Inc. ("AIG") is the authorized representative for Chartis Specialty Insurance Company ("CSIC" or "Insurer") which issued excess policy no. 01-842-68-53 ("Policy") to Oracle Corporation ("Oracle"). As you are aware, I am the Complex Claim Director handling this matter. The purpose of this letter is to advise you of CSIC's position with respect payment of certain attorney fees and expenses submitted to CSIC by Oracle for payment under the Policy.

The Policy is excess of, and follows form to, Beazley Syndicates ("Beazley") primary policy number B0509QF009013 issued to Oracle, which has limits of liability of $[redacted] ("Beazley Policy") and a self-insured retention to Oracle of $[redacted]. Subject to the terms of the Beazley Policy and additional terms and conditions of Policy, the Policy provides limits of liability, including claim expenses, of $[redacted] for each claim and in the aggregate.

**Lawsuits**

On March 28, 2014, Oracle submitted to its insurers (including CSIC) a Notice of Circumstance with respect to a potential claim against Oracle by the State of Oregon (and/or Cover Oregon) in connection with Oracle's work on the Cover Oregon Health Insurance Exchange Project ("Cover Oregon Project"). This notice advised that Cover Oregon owed Oracle money for unpaid invoices on the Cover Oregon Project, and that Oracle thought it possible Cover Oregon may seek to recover in the future some or all of approximately $116.4M that Cover Oregon had paid Oracle for the Cover Oregon Project. Oracle also advised it was consulting with the Orrick Herrington & Sutcliffe firm ("Orrick") in connection with the matter.

In 2014 and 2015 a number of lawsuits discussed below were filed, either by or against Oracle, and reported to Oracle's insurers, including CSIC:



### 1. Oracle v. Oregon Health Insurance Exchange, et al. ("Oracle T&M Case")

On August 8, 2014, Oracle filed suit against the Oregon Health Insurance Exchange Corporation and others in the United States District Court for the District of Oregon. In that action, Oracle sought to recover money from Cover Oregon for unpaid invoices on the Cover Oregon Project. Pleadings reflect that the Orrick firm and the Portland firm of Schwabe, Williamson & Wyatt ("Schwabe") represented Oracle. Based on our review of the pleadings it appears that no counterclaims were asserted against Oracle. Further, it appears that Oracle's state law claims were dismissed and refiled in the Main Case.

### 2. Rosenblum v. Oracle America, et al. ("Main Case")

On August 22, 2014, the State of Oregon and Cover Oregon (through the Oregon Attorney General) filed suit in the Circuit Court of Marion County, Oregon against Oracle and others, asserting fourteen (14) claims for relief, including Claims 1 and 2 for Fraud, Claims 3-9 under the Oregon False Claims Act, Claims 10-12 for Breach of Contract, and Claims 13 and 14 for Violation of the Oregon Racketeer Influenced and Corrupt Organizations Act. The Complaint sought recovery of $240M which Cover Oregon allegedly paid to Oracle and, under certain claims, penalties in excess of $400M. Pleadings filed by Oracle reflect that the Orrick firm and the Schwabe firm represented Oracle in this case.

### 3. State of Oregon v. Oracle America, Inc. and Mythics, Inc. ("Hosting Case")

On February 13, 2015, the State of Oregon filed a second suit in the Circuit Court of Marion County, Oregon against Oracle, asserting claims for Promissory Estoppel and Breach of Contract. The Complaint alleged that in September 2014 an Oracle Vice President orally promised to renew an On Demand Contract under which Oracle would provide hosting services for the Cover Oregon Project while Cover Oregon transitioned its health insurance exchange to another system. The Complaint further alleged that on February 5, 2015, Oracle expressed its intent not to renew the On Demand Contract for hosting services in breach of its oral promise. As relief, the State of Oregon sought specific performance to require Oracle to continue providing hosting services for Cover Oregon under the On Demand Contract until it could transition to another system. Pleadings in this action reflect that Oracle was represented by the Orrick firm, the Schwabe Firm, and the Portland firm of Lane Powell LLP ("Lane Powell").

### 4. Oracle America, Inc. v. Governor Kate Brown ("OPRL Case")

On November 12, 2015, Oracle filed suit in the Circuit Court of Marion County, Oregon against Oregon Governor Kate Brown, seeking to compel the production of documents in response to a request for documents under Oregon Public Records Law. It does not appear that any counterclaim was asserted against



Oracle. Pleadings for this action reflect that Oracle was represented by the Lane Powell firm.

Although these were the only matters reported to CSIC, our review of Court dockets identify two other actions which were filed by Oracle after the policy period for the Policy, including *Oracle America, Inc. v. Kevin Looper, et al.* on February 26, 2015 and *Oracle America, Inc., et al. v. State of Oregon, et al.*, on January 21, 2016.

### Cover Oregon Claim and Resolution

In connection with the dispute begin litigated, CSIC received quarterly reports concerning the Main Case litigation, generally and consistently reporting that the claims of Cover Oregon were without merit. During these updates, the insurers frequently requested information on the defense costs to date for Cover Oregon. Oracle advised that its defense counsel was handling several matters for Oracle, and Oracle could not provide a breakdown of fees for the Main Case as defense counsel was not instructed to record their time for specific legal matters. On July 20, 2016, Oracle's insurance representatives at Marsh told CSIC that a mediation had been scheduled and that Oracle did not want its insurers to attend. Although I made a request for a formal liability and damages analysis, no such analysis was ever provided. On August 9, 2016, CSIC was informed that although term sheets were exchanged, the mediation was not successful at reaching a resolution. On September 19, 2016, the insurers received an e-mail from Marsh attaching a Law360 Article reporting that Oracle's dispute with Cover Oregon had resolved for over $100M in cash and services.

### Request for Claim Expense Reimbursement

After Marsh advised the insurers that Oracle had settled its disputes with Cover Oregon, it was reported to me that Oracle claimed it would be submitting approximately $■■■ in defense cost invoices to Beazley for reimbursement. I was advised that there was no breakdown by specific case for the claimed defense fees. Beazley received the legal bills sporadically over several months. I specifically requested copies of these invoices over the course of the litigation and none were provided.

In January 2017, you informed me that Beazley had decided to pay its full $■M limits of liability towards payment of the invoices Oracle submitted. Thereafter, CSIC executed a non-disclosure agreement and began receiving invoices from Oracle. At this time I was advised that Oracle was claiming $■■■■■■■■ in defense costs for the Cover Oregon dispute, and that after consideration of Oracle's $■■■ SIR and $■■■ payment by the Beazley primary policy, Oracle was seeking $■■■■■■■ in Claim Expense reimbursement from CSIC. After receiving approval from Oracle to communicate with Beazley about its analysis of the defense costs and resulting payment, I learned that Beazley agreed to pay the full amount of its limits without having conducted any analysis or breakdown of the invoices submitted by Oracle. Given that no analysis of the



invoices had been conducted by Beazley, I advised both Oracle and Marsh that the review of over 6,500 pages of invoices purportedly comprising approximately $■■■ in charges would take some time to complete.

**Analysis of Oracle Invoices Submitted**

The materials submitted by Oracle for review consisted of over 6,500 pages of invoice entries from what appears to be an electronic billing system that Oracle uses with its outside counsel. The invoices were generally grouped by firm. Although it was reported to CSIC that the invoices submitted were approximately $■■■, the summary provided with the invoices showed invoices totaling $■■■■■■■■■, including $■■■■■■■■ in legal fees and $■■■■■■■ in expenses. Our review, however, determined that several invoices were missing that were identified in the summary. The invoices covered a 3 year period of time, beginning in December 2013 (four months before notice to the insurers) and continuing through December 2016, for eight (8) different law firms and one (1) consulting firm as follows:

| Firm | Total Fees & Expenses |
|---|---|
| Orrick | $■■■■■■ |
| Lane Powell | ■■■■■■ |
| Schwabe | ■■■■■■ |
| Holland & Knight, LLP | ■■■■■■ [1] |
| Venable LLP | ■■■■■■ |
| Wilmer Hale | ■■■■■■ |
| Kirkland & Ellis | ■■■■■■ |
| Morgan Lewis | ■■■■■■ |
| | |
| NERA | $■■■■■■ |
| **TOTAL** | **$■■■■■■■** |

A number of observations can be made about the invoices:

(1) Only three (3) of the eight (8) firms (Orrick, Schwabe and Lane Powell) appear to have represented Oracle in the various detailed lawsuits as counsel;

(2) More than 200 people appear to have recorded time on the invoices, including 39 partners, 5 Of Counsel, 75 associates, 22 paralegals, and 68 other non-designated timekeepers.

(3) No firm separated their time entries to identify them as specific to any particular case or controversy. We understand this was at the instruction or request of Oracle. This practice, combined with the "vague" and "block" time

---

[1] The Holland & Knight invoices includes a single invoice for $■■■ without any description or detail of the work performed.



entries (for multiple matters) is inconsistent with Oracle's own billing guidelines.

(4)     More than 70% of the time entries were either "block" billed, or were so vague in the description of the work undertaken that it is impossible to determine how much time was performed on any particular task – or which matter the work was performed for.

(5)     The submitted invoices reflect a consistent lack of efficiency in activities, with multiple timekeepers doing the same work or administrative tasks, which would be inconsistent with guidelines (including Oracle's billing guidelines).

(6)     The rates paid to the Orrick lawyers in California for litigation in Oregon are substantially greater than the market rate for qualified counsel in Oregon.

(7)     The invoice summary purported to show write downs of fees and/or expenses of more than $█████████ to all law firms, including $█████████████ to the Orrick, Schwabe and Lane Powell firms.  However, based on the information we are not able to determine for which case the write down of fees applied to.

**<u>Policy Provisions</u>**

For purposes of considering Oracle's claim for reimbursement of Claim Expenses, the following provisions of the Beazley Policy are relevant.  The policy provisions outlined below are not intended to be exhaustive of applicable provisions, but they will instruct CSIC's position relative to the request for reimbursement of Claim Expenses.

Under Insuring Clause I.B. Technology Products Coverage of the Beazley Policy to which the CSIC Policy follows form, coverage is provided for:

> **Damages**[2] and **Claim Expenses**, in excess of the Deductible, which the **Insured** shall become legally obligated to pay because of any **Claim** first made against any **Insured** and reported to the Underwriters during the **Policy Period** or **Option Extension Period** (if applicable) arising out of:
>
> 1.     Any negligent act, error or omission, or any unintentional breach of contract, by the Insured on or after the Retroactive Date set forth in Item 6. Of the Declarations and before the end of the Policy Period that results in the failure of Technology Products to perform the function or service the purpose intended;

**Technology Products** is defined in Section VI.AA of the Beazley Policy as:

> Computer or telecommunications hardware or software product, or related electronic product that is created, manufactured or developed by

---

[2] Terms in bold are defined in the Beazley Policy



the **Insured Organization** or others, or distributed, licensed, leased or sold by the **Insured Organization** to others for compensation (or for free if provided in conjunction with other fee based services or products provided for compensation or to potential or existing customers as an encouragement to purchase such products) including software updates, service packs and other maintenance releases and training provided for such products.

Clause II.A., B. and D. Defense, Settlement and Investigation of Claims, of the Beazley Policy provide in relevant part:

A.   It shall be the duty of the **Insured** and not the duty of Underwriters to defend **Claims**, provided that the Underwriters shall have the right and shall be given the opportunity to effectively associate with the **Insured** in the investigation, defense and settlement of any **Claim** that appears reasonably likely to be covered in whole or in part hereunder. The **Named Insured** shall have the right to select defense counsel.

Subject to the payment of the Deductible as provided in Clause VIII, and allocation pursuant to Clause II.B. below, the Underwriters shall advance, on behalf of the **Insured**, **Claims Expenses** which the **Insureds** have incurred prior to the final disposition of such **Claim**:

1.   for any **Claim** against the **Insured** seeking **Damages** which are payable under the terms of the Policy

2.   for any **Claim** seeking injunctive relief . . .

3.   under Insuring Clause C.4., for any **Claim** in the form of a **Regulatory Proceeding.**

provided that to the extent it is finally established that any such **Claims Expenses** are not covered under this Policy, the **Named Insured** shall repay such **Claims Expenses** to the Underwriters. The Underwriters shall pay **Claims Expenses** no more than once every 90 days.

B.   If **Damages** and/or **Claims Expenses** covered by this Policy are incurred along with costs, expenses and losses not covered by this Policy, then the **Insured** and Underwriters agree to allocate such amount between covered **Damages** and/or **Claims Expenses** and any non-covered costs, expenses or losses based upon the relative legal exposures and the relative benefits obtained by the parties. The Underwriters shall not be liable under this Policy for the portion of such amount allocated to non-covered costs, expenses or losses.

*   *   *

D.   Only those **Damages** and **Claim Expenses** that exceed the Each **Claim** Deductible which have been consented to by the



Underwriters shall be recoverable under the terms of the Policy. The Underwriters agree that the Insured may settle any Claim where the Damages and Claims Expenses do not exceed the Each Claim Deductible provided the entire Claim is resolved and the Insured receives a full release from all claimants. The Underwriters' consent to payment of Claims Expenses shall not be unreasonably withheld or delayed.

**Claim Expenses** are defined in the Beazley Policy in relevant part as:

1. reasonable and necessary fees charged by an attorney designated in accordance with Clause IIA.; and

2. all other fees, costs and expenses resulting from the investigation, adjustment, defense and appeal of a **Claim,** suit or proceeding in connection therewith, or circumstance which might lead to a claim, if incurred by the Underwriters, or by the **Insured** in accordance with Clause IIA.;

\*   \*   \*

**Claims Expenses** shall not include any salary, overhead or other charges of or by an Insured for any time spent in cooperating in the defense and investigation of any Claim or circumstance that might lead to a Claim notified under this Policy.

**<u>Coverage Analysis of Request for Claim Expense Reimbursement</u>**

The Policy only applies to covered Claim Expenses of Oracle upon exhaustion of the $█████ limits of liability of the Beazley Policy and Oracle's payment of its $█████ self-insured retention. In this instance, the CSIC policy will apply to Claim Expenses for the defense of covered claims to the extent those expenses exceed $█████.

    **a.   Cover Oregon Lawsuits**

CSIC has analyzed the coverage available for payment of Claim Expenses with respect to the four lawsuits referenced above: Oracle T&M Case, Main Case, Hosting Case and OPRL Case.[3]

In both the Oracle T&M Case and the OPRL Case, Oracle filed suit asserting affirmative claims. No counterclaims are asserted against Oracle. Since no claim for money damages or injunctive relief covered by the Beazley Policy is asserted against Oracle, there is no coverage for any legal expenses associated with these cases.

---

[3] CSIC is only addressing the issues relevant to determination of its obligation to reimburse for covered Claim Expenses and is not providing any analysis with respect to whether indemnity for Damages is due under the Policy. If Oracle submits any claim to CSIC for reimbursement of Damages (as defined in the Beazley Policy), CSIC reserves the right to provide a further coverage analysis with respect to any such claim.



In the Hosting Case, Oracle was sued for an alleged intentional breach of an oral promise in February of 2015 – long after the applicable policy period. There is no coverage for any legal expenses associated with the Hosting case. First, the Hosting Case alleges an oral promise made, and breached, by Oracle after the policy period, as such no coverage is provided by the Policy. Second, the Beazley Policy potentially provides coverage only for unintentional breaches of contract, however the Complaint in this matter alleges that Oracle specifically announced that it would not perform on its oral promise – in short it is alleged that Oracle made an intentional decision not to perform on an oral promise. Finally, there is no indication that the Hosting Case could or would exceed the $███ self-insured retention applicable to each Claim under the Beazley Policy. As such, no coverage is provided for any legal expenses associated with the Hosting Case.

In the Main Case, the State of Oregon and Cover Oregon asserted 14 claims for relief against Oracle, including Claims 1 and 2 for Fraud, Claims 3-9 under the Oregon False Claims Act, Claims 10-12 for Breach of Contract, and Claims 13 and 14 for Violation of the Oregon Racketeer Influenced and Corrupt Organizations Act. As set forth below, under the terms of the Beazley Policy, there is an obligation to pay Claim Expenses associated with the defense of only some of the claims.

a. There is the potential for coverage of Claims 10, 11 and 12 for Breach of Contract, subject to Exclusions E, F, G, H, I, K and L, and as such Claim Expenses are covered for these claims.

b. There is no coverage under the applicable insuring agreement for Claims 1 and 2 for Fraud because these claims are not premised upon negligence or an "unintentional" breach of contract. However, under Exclusion A Claims Expenses for the defense of a claims alleging dishonest, fraudulent or malicious acts may be reimbursed until such time as there is a final adjudication, judgement or decision establishing that the Insured engaged in such conduct. Specifically, Exclusion A of the Beazley Policy precludes coverage for any claim:

> With respect to Insuring Clauses A., B. and D., arising out of or resulting from any criminal (except where such criminal act is based on unintentional conduct) dishonest, fraudulent or malicious act, error or omission committed by any **Insured**; however, this Policy shall apply to **Claims Expenses** incurred in defending any such **Claim** alleging the foregoing until such time as there is a final adjudication, judgment, binding arbitration decision or conviction against the **Insured**, or written admission by the **Insured**, establishing such conduct, at which time the Named Insured shall reimburse the Underwriters for all **Claims Expenses** incurred defending the **Claim** and the Underwriters shall have no further liability for **Claims Expenses**;

Further, coverage for these claims is precluded under exclusions E, F, G or I of the Beazley Policy.



c.  No coverage is provided for Claims 3-9 of the Oregon False Claims Act, because these claims are not premised upon negligence or an "unintentional" breach of contract, and therefore do not fall under the insuring agreement of the Beazley Policy. Further, coverage is precluded under Exclusions E, F, G, K and N of the Beazley Policy.

d.  No coverage is provided for Claims 13 and 14 for Violation of the Oregon Racketeer Influenced and Corrupt Organization Act because these claims are not premised upon negligence or an "unintentional" breach of contract, and therefore do not fall under the insuring agreement of the Beazley Policy. Further coverage is not available pursuant to Exclusion N of the Beazley Policy, which precludes coverage for any claim:

> For or arising out of the actual or alleged violation of the Organized Crime Control Act of 1970 (commonly known as Racketeer Influenced and Corrupt Organizations Act or RICO), as amended, or any regulation promulgated thereunder or any similar federal law or legislation, or law or legislation of any state, province or other jurisdiction similar to the foregoing, whether such law is statutory, regulatory or common law; . . .

The above analysis with respect to coverage for Claim Expenses provides that only five (5) of the fourteen (14) alleged claims in the Main Case constitute those for which the Policy would reimburse for Claim Expenses. Under the terms of the Policy, the parties are to allocate defense expenses between covered and non-covered claims, and CSIC is not obligated to pay Claim Expenses associated with the defense of non-covered claims. In this instance, at least nine (9) of the fourteen (14) claims alleged against Oracle in the Main Case are claims for which CSIC has no obligation to reimburse for Claim Expenses.

### b.  Defense Counsel

The pleadings from the relevant litigations reflect that only three (3) of the (8) law firms that Oracle submitted invoices from represented Oracle as defense counsel in the four (4) identified lawsuits, and only two firms (Schwabe and Orrick) represented Oracle as defense counsel in the Main Case. The submitted invoices reflect the combined fees and expenses for all work by Schwabe and Orrick for all matters is $ ███████████. This includes work on three lawsuits (Oracle T&M Case, Hosting Case and OPRL Case) and the defense of nine (9) claims (in the Main Case) for which there is no coverage for Claims Expenses. Further, the materials submitted reflect write downs to the Orrick and Schwabe invoices of $ ████████, but the information does not reflect to which case the write downs were made. Based on the invoices provided and the pleadings we have reviewed, it is our preliminary analysis is that the fees and expenses for any of the other law firms do not constitute Claim Expenses under the Policy.

### c.  Allocation of Claim Expenses

As discussed above, the Policy does not provide coverage for costs of defense non-covered claims. Based upon our review of the Main Case, the Policy would



only provide coverage for Claim Expenses for only five (5) of the fourteen (14) claims asserted. The Policy requires allocation of costs of defense between covered and non-covered claims. It is our opinion that a fair allocation of defense expenses for the Main Case, based on covered/non-covered claims, requires reimbursement by CSIC of 50% of the attorney fees and expenses invoiced by the Orrick and Schwabe firms for the Main Case.

**Conclusion**

The CSIC policy provides coverage for Claim Expenses associated with the defense of potentially covered claims. In this instance, three (3) of the lawsuits did not assert claims against Oracle for which coverage could potentially exist under the Policy. For the Main Case, two law firms are identified as defense counsel for Oracle – Schwabe and Orrick. Oracle has submitted invoices from these defense firms totaling $_____ in total fees and expenses ($_____ after write-downs), but this is for all work on all cases. At the direction of Oracle the law firms did not separate their billing between lawsuits and clearly some of their fees relate to lawsuits for which there is no coverage under the Policy. Further, we believe that no more than 50% of their invoiced legal fees and expenses for the Main Case can be fairly allocated to the defense of potentially covered claims. As such, the total invoiced Claim Expenses which could be sought under the Policy are significantly less than the $____ necessary to trigger coverage for Claim Expenses under the CSIC Policy.

For the reasons stated in this letter, CSIC must deny any obligation to pay any amount of the defense invoices submitted. Should you have any additional information that you feel would either cause us to review our position or would assist us in our investigation or determination, we ask that you advise us as soon as possible.

If you believe that this claim has been wrongfully denied, in whole or in part, you may have the matter reviewed by the California Department of Insurance. The address and telephone number of the unit that reviews complaints regarding insurer claim practices is:

> California Department of Insurance
> Claims Service Bureau
> 300 South Spring Street, 11th Floor
> Los Angeles, CA 90013
> Phone: (800) 927-4357
> Fax: (213) 897-8921

CSIC's preliminary coverage position is based on the information presently available to us. This letter is not, and should not be construed as, a waiver of any terms, conditions, exclusions or other provisions of the Policy, or any other policies of insurance issued by CSIC or any of its affiliates. CSIC expressly reserves all of its rights under the Policy, including the right to assert additional defenses to any claims for coverage, if subsequent information indicates that such action is warranted.



In closing, allow me to reiterate that we value you as a customer and encourage you to contact us should you have any questions or concerns regarding the contents of this letter. Thank you for your cooperation in this matter.

Sincerely,

/s/ Deborah Hirschorn

**Deborah Hirschorn**

cc:  Erica.sweetman@marsh.com
  Richard.D.Brew@marsh.com