UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ORACLE CORPORATION,<br><br>                              Plaintiff,<br><br>v.<br><br>CHARTIS SPECIALTY INSURANCE<br>COMPANY,<br><br>                              Defendant. | Civil Action No. 1:18-CV-03440-GHW<br><br>**ORAL ARGUMENT REQUESTED** |

---

## DEFENDANT AIG SPECIALTY INSURANCE COMPANY'S (F/K/A CHARTIS SPECIALTY INSURANCE COMPANY) MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO PARTIALLY DISMISS THE COMPLAINT

---

BRESSLER, AMERY & ROSS, P.C.
17 State Street
New York, New York  10004
T: (212) 425-9300
F: (212) 425-9337

*Attorneys for Defendant*
*AIG Specialty Insurance Company*
*(f/k/a Chartis Specialty Insurance*
*Company)*

On the Brief:

Robert Novack, Esq.
Charles W. Stotter, Esq.
Christina D. Gallo, Esq.

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT................................................................................................ 1

STATEMENT OF FACTS .................................................................................................... 3

    A.    THE POLICIES ..................................................................................... 3

    B.    THE UNDERLYING LAWSUITS............................................................. 6

    C.    ORACLE MERELY APPRISED AIGSIC OF THE PROCEDURAL STATUS OF THE COVER OREGON LAWSUITS ....................................................................................... 7

    D.    ORACLE ENTERED INTO A SETTLEMENT OF THE STATE ACTION WITHOUT THE INSURERS' CONSENT .......................................................................................... 8

ARGUMENT ..................................................................................................................... 10

    I.    LEGAL STANDARD ......................................................................... 10

    II.    ORACLE'S CLAIMS FOR INDEMNIFICATION OF SETTLEMENT COSTS MUST BE DISMISSED.................................... 11

        A.    AIGSIC Has No Duty to Indemnify Oracle for Settlement of the State Action Because Oracle Entered into the Settlement Without AIGSIC's Written Consent, In Breach Of the Primary Policy's Consent-to-Settle Provision ................................................. 11

        B.    Oracle Was Not Legally Excused From Complying with the Primary Policy's Consent-to-Settle Provision ................................................................ 14

CONCLUSION .................................................................................................................. 20

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aerojet-General Corp. v. Commercial Union Ins. Co.*,
   65 Cal. Rptr. 3d 803 (2007) ........................................................................14

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ....................................................................................10

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ....................................................................................10

*In re Bristol-Myers Squibb Sec. Litig.*,
   312 F. Supp. 2d 549, 555 (S.D.N.Y. 2004) ..................................................11

*California Union Ins. Co. v. Poppy Ridge Partners*,
   274 Cal. Rptr. 191 (1990) ...........................................................................18

*Chambers v. Time Warner, Inc.*,
   282 F.3d 147 (2d Cir. 2002) ........................................................................11

*Cortec Indus., Inc. v. Sum Holding L.P.*,
   949 F.2d 42 (2d Cir. 1991) ..........................................................................10

*Crowley Mar. Corp. v. Fed. Ins. Co.*,
   2008 U.S. Dist. LEXIS 97393 (N.D. Cal. Dec. 1, 2008), *aff'd*, 2010 U.S.
   App. LEXIS 7333 (9th Cir. Apr. 9, 2010) .............................................11, 12

*In re Elan Corp. Sec. Litig.*,
   543 F. Supp. 2d 187 (S.D.N.Y. 2008) ..........................................................11

*Enodis Corp. v. Cont'l Cas. Co.*,
   2013 U.S. Dist. LEXIS 83672 (C.D. Cal. June 10, 2013)............................19

*Feinman v. Schulman Berlin & Davis*,
   677 F. Supp. 168 (S.D.N.Y. 1988).................................................................11

*Franklin Loan Corp. v. Certain Underwriters at Lloyd's*,
   2011 U.S. Dist. LEXIS 163324 (C.D. Cal. Apr. 5, 2011)............................12

*Fuller-Austin Insulation Co. v. Highlands Ins. Co.*,
   38 Cal. Rptr. 3d 716 (Ct. App. 2006)...........................................14, 15, 16, 17

*Gribaldo, Jacobs, Jones & Associates, et al. v. Agrippina Versicherunges A.G.*, 91 Cal. Rptr. 6, 15 (1970) .................................................................................. 19

*Haskins v. Emplrs Ins. of Wausau,*
710 F. App'x 755 (9th Cir. 2018) ........................................................................ 12

*Jamestown Builders v. Gen. Star Indem. Co.,*
91 Cal. Rptr. 2d 514 (1999) ........................................................................ 12, 13

*Kassner v. 2nd Ave. Delicatessen, Inc.,*
496 F.3d 229 (2d Cir. 2007) ................................................................................ 10

*In re Livent, Inc. Noteholders Sec. Litig.,*
151 F. Supp. 2d 371 (S.D.N.Y. 2001) .................................................................. 11

*LMA N. Am., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, P.A.,*
924 F. Supp. 2d 1188 (S.D. Cal. 2013) .............................................................. 16

*Low v. Golden Eagle Ins. Co.,*
2 Cal. Rptr. 3d 761 (2003) .................................................................................. 12

*MBIA Inc. v. Fed. Ins. Co.,*
652 F.3d 152 (2d Cir. 2011) ................................................................................ 17

*N.Y. Cent. Mut. Fire Ins. Co. v. Danaher,*
736 N.Y.S.2d 195 (N.Y. App. Div. 3d Dep't 2002) ............................................ 18

*OneWest Bank, FSB v. Hous. Cas. Co.,*
676 F. App'x 664 (9th Cir. 2017) ........................................................................ 12

*State Farm Auto Insurance Company v. Blanco,*
617 N.Y.S.2d 898 (N.Y. App. Div. 2d Dep't 1994) ............................................ 18

*State of N.Y. v. AMRO Realty Corp.,*
936 F.2d 1420 (2d Cir. 1991) .............................................................................. 18

*Velasquez v. Truck Ins. Exchange,*
5 Cal. Rptr. 2d 1 (1991) ...................................................................................... 18

*Waller v. Truck Ins. Exch., Inc.,*
44 Cal. Rptr. 2d 370 (1995) ................................................................................ 18

*Yak v. Bank Brussels Lambert,*
252 F.3d 127 (2d Cir. 2001) ................................................................................ 10

**<u>Rules</u>**

Fed. R. Civ. P. 12(b)(6)....................................................................................................1, 10

Defendant AIG Specialty Insurance Company (f/k/a Chartis Specialty Insurance Company) ("Defendant" or "AIGSIC") respectfully moves (i) to partially dismiss the First Cause of Action of Plaintiff's Complaint, to the extent it seeks declaratory relief as to indemnification of settlement costs, and (ii) to dismiss the Third Cause of Action alleging a breach of contract seeking recovery for indemnity of $35 million in settlement costs, pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief can be granted.

## PRELIMINARY STATEMENT

This insurance coverage action arises out of a dispute concerning AIGSIC's obligations under an excess professional and technology services errors and omissions liability policy ("Excess Policy") that follows form to an underlying primary policy issued by Beazley ("Primary Policy").

Plaintiff Oracle Corporation ("Oracle") seeks defense costs and indemnity coverage for claims against it, arising out of Oracle's work performed for the State of Oregon between 2010 and 2014 in connection with Oregon's healthcare insurance exchange run by the Oregon Health Insurance Exchange Corporation (the "Cover Oregon Project"), and a related project to modernize Oregon's health and human services IT systems (the "Modernization Project"). Oracle's work gave rise to seven lawsuits initiated by or against Oracle (collectively the "Cover Oregon Lawsuits").[1]

The Complaint's First Cause of Action, which must be dismissed in part, seeks declaratory relief that AIGSIC breached its obligations under the Excess Policy and therefore has a duty to pay Claims Expenses (defense costs) for the Cover Oregon Lawsuits and Damages

---

[1]   These lawsuits are separately identified in the Complaint as the "Federal Action," the "State Action," the "Injunction Lawsuit," the "Looper Lawsuit," the "Public Records Lawsuit," the "Settlement Lawsuit," and the "Writ of Mandamus Lawsuit."  Compl. ¶ 2.

(indemnity) for amounts it paid in settlement costs to settle the State Action.[2]   The Complaint's Second Cause of Action, which is not at issue in this motion, asserts a claim for breach of contract and seeks recovery of defense costs up to the Excess Policy limit ("Claim for Defense Costs").  The Complaint's Third Cause of Action asserts a claim for breach of contract and seeks recovery of indemnity for a $35 million settlement entered into by Oracle with the State of Oregon ("Claim for Indemnity of Settlement Costs").

AIGSIC moves to partially dismiss the Complaint as to its claims for indemnification of settlement costs because Oracle has admittedly failed to comply with a condition precedent to coverage – that Oracle secure AIGSIC's written consent *prior* to entering into its $35 million settlement agreement with the State of Oregon.  Thus, the First Cause of Action, to the extent it seeks declaratory relief as to the indemnification of settlement costs, and the Third Cause of Action alleging a breach of contract, both fail to state a claim.

Under California law,[3] it is well settled that an insurer has no indemnity obligation where the insured settles without the insurer's consent in breach of a policy's consent-to-settle/no voluntary payment provision.  The Primary Policy contains a consent-to-settle provision which provides, in relevant part, "The Insured shall not . . . enter into any settlement, stipulate to any judgement or award or dispose of any Claim *without the written consent of the Underwriters*. . ." Compl., Exh. A (Primary Policy, § XVII) (emphasis added).

Oracle never sought, let alone secured, the written consent of AIGSIC prior to entering into its settlement with the State of Oregon.  The Complaint itself lacks any reference whatsoever to Oracle having ever sought the consent of AIGSIC.  Rather, the Complaint acknowledges that

---

[2] See ECF Doc. No. 1 (Complaint).

[3] The Primary Policy, to which the AIGSIC Excess Policy follows form, contains a choice of law provision providing that California law should govern any dispute involving the Policy.

Oracle only first sought reimbursement of the settlement costs in January 2017, approximately four months *after* Oracle had already entered into the settlement.  Compl. ¶ 57.

Moreover, the allegations in the Complaint do not support Oracle's claim that any written consent obligation was excused on account of breach, waiver, abandonment, estoppel, and/or futility.  The Complaint does not expressly allege that Oracle ever asked AIGSIC to participate in settlement negotiations, or that Oracle ever invited AIGSIC to attend or participate in the failed mediation that preceded the settlement.  Nor does the Complaint contain a single allegation that Oracle ever asked AIGSIC to fund the settlement prior to informing AIGSIC on September 19, 2016 that it had settled the State Action.  Rather, as mentioned above, Oracle admittedly waited until January 2017 to inform AIGSIC, *for the first time*, that it intended to seek reimbursement for the amounts paid in settlement of the State Action.  In short, the Complaint fails to allege that Oracle ever requested consent to settle from AIGSIC, or that AIGSIC ever withheld consent to settle.  Compl. ¶ 15.

Accordingly, Oracle's First Cause of Action for declaratory relief, to the extent it relates to indemnification of settlement costs, and the Third Cause of Action, for breach of contract based on failure to pay settlement costs, must be dismissed.

## STATEMENT OF FACTS

### A.  THE POLICIES

Certain Underwriters at Lloyd's, Syndicates 623 and 2623, subscribing to Policy No. QF009013 ("Beazley") issued to Oracle a Professional and Technology Based Services, Technology Products, Computer Network Security, Privacy Liability and Multimedia and Advertising Liability Insurance Policy for the policy period of March 31, 2013 to March 31, 2014 (the Primary Policy).  Compl. ¶ 15; *see also* Compl., Exh. A.

Chartis Specialty Insurance Company ("Chartis", n/k/a AIGSIC) issued to Oracle the Excess Policy, Policy No. 01-842-68-53, for the policy period of March 31, 2013 to March 31, 2014, which follows form to, and incorporates the terms, conditions, definitions, limitations, and exclusions of, the Primary Policy.  Compl. ¶¶ 15, 17, 18; *see also* Compl., Exh. B.  The Excess Policy provides the first layer of excess coverage to Oracle, in excess of the Primary Policy limits of liability and a self-insured retention.  Compl. ¶ 17; *see also* Compl., Exh. B.

The Primary Policy provides claims made and reported coverage to Oracle for "Claims first made against the Insured and reported to the Underwriters during the Policy Period." Compl., Exh. A.  The Primary Policy specifically provides coverage for Damages and Claims Expenses, "in excess of the Each Claim Deductible":

> which the Insured shall become legally obligated to pay because of any Claim first made against any Insured and reported in writing to the Underwriters during the Policy Period . . . *arising out of any negligent act, error or omission, misstatement or misleading statement or any unintentional breach of contract, in rendering or failure to render Professional Services or Technology Based Services* . . . by the Insured or by any person or entity, including an independent contractor, for whose negligent act, error or omission, misstatement or misleading statement or unintentional breach of contract the Insured Organization is legally responsible.

Compl., Exh. A (Primary Policy, § I.A) (emphasis added).  The Primary Policy also provides coverage for Damages and Claims Expenses, in excess of the Deductible:

> which the Insured shall become legally obligated to pay because of any Claim first made against any Insured and reported to the Underwriters during the Policy Period . . . arising out of:
>
> 1.  any negligent act, error or omission, or any unintentional breach of contract, by the Insured . . . that results in the failure of Technology Products to perform the function or serve the purpose intended; or
>
> 2.  infringement of copyright committed by the Insured . . . with respect to software Technology Products.

4

*Id*. (Primary Policy, § I.B) (emphasis added).  Damages are defined in relevant part as follows:

### VI. DEFINITIONS

*****

J.  "Damages" means a monetary judgment, award or  settlement.

The term Damages shall not include or mean:

*****

8. any amounts for which the Insured is not liable, or for which there is no legal recourse against the insured; …

*Id.* (Primary Policy, § VI.J).

As a condition precedent to coverage, the Primary Policy contains a consent to settle provision, which expressly provides:

### XVII.  ASSISTANCE  AND  COOPERATION  OF  THE INSURED

*****

The Insured shall not admit liability, make any payment, assume any obligations, incur any expense, enter into any settlement, stipulate to any judgement or award or dispose of any Claim *without the written consent of the Underwriters*, except as specifically provided for in Clause II [which concerns settlement within the retention].

*Id*. (Primary Policy, § XVII) (emphasis added).  Therefore, an Insured entering into a settlement without the written consent of the primary insurer is in breach of the Primary Policy's consent to settle provision.  Indeed, Clause II.D of the Primary Policy provides in relevant part:

Only those Damages and Claims Expenses that exceed the Each Claim Deductible which have been consented to by the Underwriters shall be recoverable under the terms of this Policy. The Underwriters agree that the Insured may settle any Claim *where the Damages and Claims Expenses do not exceed the Each Claim Deductible* provided the entire Claim is resolved and the Insured receives a full release from all claimants. …

*Id.* (Primary Policy, § II.D) (emphasis added).  Thus, an insured may only settle a claim without written consent where Damages and Claims Expenses do not exceed the retention.

**B.**     **THE UNDERLYING LAWSUITS**

Beginning in 2014, Oracle was involved in various lawsuits arising from Oracle's work performed for the State of Oregon between 2010 and 2014 in connection with Oregon's healthcare insurance exchange (the Cover Oregon Project), and the related Modernization Project.  The seven (7) underlying lawsuits for which Oracle seeks defense cost and indemnity coverage, collectively known as the Cover Oregon Lawsuits include:

1. *Oracle America, Inc. v. Oregon Health Insurance Exchange Corp., et al.*, Case No. 3:14-cv-1279 (D. Or.) filed in August 2014, along with cross-appeals to the Ninth Circuit filed in December 2015 under the caption *Oracle America, Inc. v. State of Oregon*, Case Nos. 15-cv-35950 and 15-cv-35975 (together, the "Federal Action");

2. *Rosenblum, et al. v. Oracle America, Inc., et al.*, Case No. 14-cv-20043 (Or. Cir. Ct., Marion Cnty.), filed in August 2014 (the "State Action");

3. *State of Oregon v. Oracle America, Inc., et al.*, Case No. 15-cv-03287 (Or. Cir. Ct., Marion Cnty.), filed in February 2015 (the "Injunction Lawsuit");

4. *Oracle America, Inc. v. Kevin Looper, et al.*, Case No. 15-cv-04705 (Or. Cir. Ct., Multnomah Cnty.), filed in February 2015 (the "Looper Lawsuit");

5. *Oracle America, Inc. v. Governor Kate Brown*, Case No. 15-cv-30762 (Or. Cir. Ct., Marion Cnty.) filed in November 2015 (the "Public Records Lawsuit");

6. *Oracle America, Inc. v. State of Oregon, by and through Governor Kate Brown, et al.*, Case No. 16-cv-01760 (Or. Cir. Ct., Marion Cnty.) filed in January 2016 (the "Settlement Lawsuit"); and

7. *Oracle America, Inc. v. Sylvia Mathews Burwell*, Case No. 1:16-cv-00451-RJL (D.D.C.) filed in March 2016 (the "Writ of Mandamus Lawsuit").

Compl. ¶ 2.  The only underlying lawsuit for which coverage is sought that is at issue in this motion is the State Action.

The State of Oregon and Cover Oregon Project initially threatened, and ultimately brought, suit against Oracle in the form of the State Action, seeking damages from Oracle arising from Oracle's provision of software, consulting and other services to the State of Oregon in the Cover Oregon Project and Modernization Project.  *Id.* ¶¶ 3, 29, 32.  In response to this initial threat of litigation, Oracle preemptively and affirmatively filed the Federal Action against the Cover Oregon Project.  *Id.* ¶ 35.  Oracle similarly affirmatively filed the Looper, Public Records, Settlement, and Writ of Mandamus Lawsuits.  *Id.* ¶ 38.

## C.    ORACLE MERELY APPRISED AIGSIC OF THE PROCEDURAL STATUS OF THE COVER OREGON LAWSUITS

Beginning in 2014, Oracle provided notice to AIGSIC of the initial Cover Oregon dispute, and provided updates regarding the various Cover Oregon Lawsuits that arose in connection therewith during the pendency of those Lawsuits.  Compl. ¶ 42.  On March 28, 2014, Oracle first reported a notice of circumstances to AIGSIC, informing it of the potential claims arising from Oracle's provision of software, consulting and other services to the State of Oregon for the Cover Oregon Project and Modernization Project.  *Id.*, ¶ 43.  AIGSIC promptly acknowledged notice of the dispute on April 10, 2014.  *Id.*, ¶ 45.  Thereafter, on August 18, 2014, AIGSIC issued a reservation of rights letter to Oracle, which acknowledged that AIGSIC's Excess Policy followed form to the Primary Policy, and requested that Oracle provide it with copies of Oracle's coverage communications with the primary insurer, Beazley, and information regarding the status of this claim, including any status reports drafted by Beazley or defense counsel.  *Id.*, ¶ 46.  In the August 18 reservation of rights letter, AIGSIC expressly requested that Oracle keep AIGSIC apprised as this matter progresses.  *See* Declaration of Deborah Hirschorn ("Hirschorn Decl."), Exh. 1.  Indeed, while Oracle alleges that it provided written status updates to and participated in quarterly telephone conferences with AIGSIC regarding the procedural

status and material factual developments in the Cover Oregon Lawsuits (*Compl.* ¶¶ 47-48), the Complaint does not allege that Oracle provided written analysis of the underlying claims, or that any such written analysis was actually provided to AIGSIC; Oracle merely participated in several quarterly telephone conferences with AIGSIC (and other insurers) between March 2014 and September 2016, during which it advised AIGSIC of the procedural status based upon information from its defense counsel in the Cover Oregon Lawsuits. *See id.,* ¶ 48.

## D.   ORACLE ENTERED INTO A SETTLEMENT OF THE STATE ACTION WITHOUT THE INSURERS' CONSENT

The Complaint alleges that "[o]n or about July 20, 2016," in order to comply with its obligations to keep AIGSIC apprised of the status of litigation and provide any status reports drafted by the primary carrier or defense counsel, Oracle, through its broker, (i) informed AIGSIC, as well as its other E&O Insurers, of an upcoming mediation in the State Action (apparently held before August 4, 2016), (ii) provided information regarding the settlement posture of the parties, and (iii) provided a pre-mediation memorandum prepared by Oracle's defense counsel. *Id.,* ¶¶ 50-52.

The Complaint does not allege that Oracle invited AIGSIC or Beazley, or any other E&O insurer, to participate in the mediation or any settlement negotiations. *See generally, Id.* Nor does it allege that, prior to the mediation, Oracle ever requested consent to enter into, or reimbursement or indemnification for, any settlement it may enter into at mediation. *See generally, Id.* Though the mediation was unsuccessful, on or about September 19, 2016, Oracle informed AIGSIC that it had ultimately settled the State Action with a $35 million cash component, and that all the Cover Oregon Lawsuits had been dismissed. *Id.* ¶ 55. The Complaint does not allege that Oracle ever sought, let alone obtained, AIGSIC's or Beazley's written consent to settle prior to entering into the settlement. *See generally, Id.* ¶¶ 50-56.

It was not until January 10, 2017, after Beazley agreed to pay the full limits of the Primary Policy, that Oracle sought reimbursement from AIGSIC for the defense costs and amounts paid in Settlement of the State Action *for the first time*.  *See* Hirschorn Decl., Exh. 2 (January 10, 2017 Email from Oracle to AIG).  By way of email dated January 10, 2017 to Deborah Hirschorn, an AIG Claims Complex Claims Director, Deborah Miller, Oracle's Vice President and Associate General Counsel wrote in relevant part:

> . . . As I think you know, Beazley will be paying its limits on the Cover Oregon claim.  Oracle has additional defense costs in excess of our self-insured retention and the amount of Beazley's policy, plus the sums we paid in settlement.  I would therefore like to *begin our discussions with AIG about reimbursement of these costs* and to send you the attorneys' bills in the matter. . .

*Id*. (emphasis added).

Indeed, the January 10, 2017 email was the only time Oracle ever sought reimbursement for the settlement.  Every time Oracle followed up with "subsequent written requests to [AIGSIC] to honor its obligations under the [AIGSIC] Excess Policy and tender payment to Oracle," Oracle tellingly only requested reimbursement of defense costs in the form of submitted legal fees.  Compl. ¶ 58; *see also* Hirschorn Decl., Exhs. 3 and 4 (March 8, 2017 Oracle email to AIG; June 12, 2017 email thread between Oracle and AIG).

Accordingly, AIGSIC thereafter issued a coverage letter on July 19, 2017 disclaiming coverage of the submitted legal fee invoices on the grounds that: (i) Claim Expenses for the affirmative lawsuits filed by Oracle were not covered under the Excess Policy; (ii) Claim Expenses which could be sought under the Excess Policy for potentially covered claims did not exceed the self-insured retention plus the total limits of the Primary Policy; and (iii) certain exclusions in the Primary Policy applied to preclude coverage.  Compl. ¶ 61.

In addition, on November 10, 2017, AIGSIC issued a supplemental coverage letter reaffirming its prior coverage position as stated in the July 19, 2017 coverage letter, that no reimbursement of the submitted legal fee invoices was due under the Excess Policy because AIGSIC's coverage layer had not been reached.  *Id*. ¶ 63.

## ARGUMENT

### I.   LEGAL STANDARD

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "the court is to accept as true all facts alleged in the complaint" and "draw all reasonable inferences in favor of the plaintiff."  *Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).  But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . .  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).  To avoid dismissal, the complaint must contain "enough facts to state a claim to relief that is plausible on its face," i.e. facts that "nudge[] [the plaintiff's] claims across the line from conceivable to plausible . . . ."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

On a motion to dismiss, a court may properly consider "any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference."  *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991). Additionally, a court may also consider particular documents which are integral to the claims at issue, of which the plaintiff has notice.  *Yak v. Bank Brussels Lambert*, 252 F.3d 127, 130-31 (2d Cir. 2001); *see also Cortec*, 949 F.2d at 47 ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a prospectus upon which it solely relies and which is integral to the complaint, the defendant may produce the prospectus when attacking the complaint for its failure to state a claim, because plaintiff should not so easily be allowed to escape the consequences of

its own failure."). *See, e.g., Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153-54 & n. 4 (2d Cir. 2002) (contracts properly considered on Rule 12(b)(6) motion where "the Amended Complaint [was] replete with references to the contracts" and requested adjudication related to their terms); *see also Feinman v. Schulman Berlin & Davis*, 677 F. Supp. 168, 170 n. 3 (S.D.N.Y. 1988) (finding document referred to in complaint, but not identified by name, incorporated by reference).

Moreover, the court "need not credit . . . characterizations presented as factual allegations," *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 404 (S.D.N.Y. 2001), or "accept as true an allegation that is contradicted by documents on which the complaint relies." *In re Elan Corp. Sec. Litig.*, 543 F. Supp. 2d 187, 206 (S.D.N.Y. 2008) (quoting *In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp. 2d 549, 555 (S.D.N.Y. 2004)). Thus, in connection with the instant motion, the Court may consider the Primary Policy, the Excess Policy, and written communications between Oracle and AIGSIC referenced in the Complaint, because they are integral to the allegations of the Complaint.

## II.   ORACLE'S CLAIMS FOR INDEMNIFICATION OF SETTLEMENT COSTS MUST BE DISMISSED

### A.   AIGSIC Has No Duty to Indemnify Oracle for Settlement of the State Action Because Oracle Entered into the Settlement Without AIGSIC's Written Consent, In Breach Of the Primary Policy's Consent-to-Settle Provision

Consent-to-settle provisions, also known as "voluntary payment" or "no voluntary payment" clauses, are valid and enforceable under California law, and typically prohibit the insured from voluntarily making payments, assuming obligations, or incurring expenses without the insurer's consent. *Crowley Mar. Corp. v. Fed. Ins. Co.*, 2008 U.S. Dist. LEXIS 97393, at *23-24 (N.D. Cal. Dec. 1, 2008), *aff'd*, 2010 U.S. App. LEXIS 7333 (9th Cir. Apr. 9, 2010).

Indeed, California law is clear: an insurer has no indemnity obligation where the insured settles without the insurer's consent in breach of the consent-to-settle/no voluntary payment provision.  *See Franklin Loan Corp. v. Certain Underwriters at Lloyd's*, 2011 U.S. Dist. LEXIS 163324, at *16-17 (C.D. Cal. Apr. 5, 2011) (granting insurer's motion to dismiss coverage and indemnification claim for settlement costs without leave to amend because insured's post-tender "failure to request [insurer's] written consent before reaching a settlement with Countrywide is a breach of the express terms of the Policy"); *see also OneWest Bank, FSB v. Hous. Cas. Co.*, 676 F. App'x 664, 666 (9th Cir. 2017) (an insured breached the consent-to-settle provision of its professional liability insurance policy by executing a settlement term sheet prior to seeking or obtaining the consent of its insurer and therefore was not entitled to coverage under the policy); *Low v. Golden Eagle Ins. Co.*, 2 Cal. Rptr. 3d 761, 773 (2003) (insurer not liable for post-tender costs, including settlement, where settlement was negotiated and executed without insurer's knowledge or consent); *Jamestown Builders v. Gen. Star Indem. Co.*, 91 Cal. Rptr. 2d 514, 519-20 (1999) (affirming appellee-insurer's demurrer to plaintiff's second amended complaint without leave to amend because the policy in question provided that notice was a condition precedent to appellant's right to be indemnified for the settlement); *Haskins v. Emplrs Ins. of Wausau*, 710 F. App'x 755, 757 (9th Cir. 2018) ("The policies contained a no-voluntary-payments clause that prohibited the insured from 'voluntarily mak[ing] any payment' or 'assum[ing] any obligation.' Haskins breached this clause by settling the underlying action without the consent of its defending insurer.  Summary judgment on this claim was proper."); *Crowley*, 2008 U.S. Dist. LEXIS 97393, at *23, *aff'd*, 2010 U.S. App. LEXIS 7333 (9th Cir. Apr. 9, 2010) (granting primary and excess insurers' motion for summary judgment finding it

undisputed that defendants had no notice of the settlement until after the settlement was executed and therefore the insured violated the policy consent requirement).[4]

Here, the Primary Policy, to which the Excess Policy follows form, contains the following consent-to-settle provision:

> The Insured shall not admit liability, make any payment, assume any obligations, incur any expense, enter into any settlement, stipulate to any judgement or award or dispose of any Claim *without the written consent of the Underwriters*, except as specifically provided for in Clause II [which concerns settlement within the retention].

Compl., Exh. A (Primary Policy, § XVII) (emphasis added).  Moreover, written consent was not excused because Damages and Claims Expenses exceeded the retention.  *See* pp. 5-6, *supra* (Primary Policy, § II.D).

Oracle never sought, let alone secured, the written consent of AIGSIC, or the primary insurer, prior to entering into its settlement with the State of Oregon.  The Complaint itself lacks any reference whatsoever to Oracle having ever sought the consent of AIGSIC or the primary insurer.  Rather, the Complaint acknowledges that Oracle did not inform AIGSIC of the settlement terms until September 19, 2016, *after* Oracle had agreed to them (Compl. ¶ 55), and only first sought reimbursement of the settlement costs in January 2017, approximately four months *after* Oracle had already entered into the Settlement.  Compl. ¶ 57; *see also* Hirschorn Decl., Exh. 2 ("Oracle has additional defense costs in excess of our self-insured retention and the amount of Beazley's policy, plus the sums we paid in settlement.  I would therefore like to *begin our discussions with AIG about reimbursement of these costs*. . .") (emphasis added).

---

[4] The only exceptions to enforcement of the "no consent" provisions are where (i) the insurer has declined a tendered defense, *see Jamestown Builders*, 91 Cal. Rptr. 2d 514 at 518, or (ii) the insured is forced to make payments involuntarily due to circumstances beyond its control, such as to avoid a default judgment or where the insured is unaware of the identity of its insurer.  *Id.*  Neither exception applies here as (i) Oracle admits that it entered into the Settlement *before* AIGSIC denied coverage, Compl. ¶¶ 55, 60, and (ii) there are no allegations in the Complaint that Oracle was forced to enter the Settlement due to circumstances beyond its control.

Moreover, California authority indicates that consent-to-settle provisions are enforceable as to *excess insurers* with no duty to defend, even if they are aware of ongoing settlement discussions.  *See Aerojet-General Corp. v. Commercial Union Ins. Co.*, 65 Cal. Rptr. 3d 803, 814-15 (2007) (approving the trial court's grant of summary judgment in favor of excess insurers, based on the consent-to-settle provision, despite the fact that the excess insurers had no duty to defend and in spite of the insured's argument that the excess insurers, who were "apprised of [the insured's] settlement strategy and negotiations," should be estopped from invoking consent-to-settlement due to their silence during settlement negotiations).  Based upon all of this legal precedent, Oracle's allegations that it kept AIGSIC apprised of the status of the litigation and its settlement strategy and negotiations cannot serve to overcome the strict requirements of the Primary Policy's consent to settle provision.

## B.    Oracle Was Not Legally Excused From Complying with the Primary Policy's Consent-to-Settle Provision

Oracle's suggestion that it was excused from the requirement of securing AIGSIC's written consent to enter into a settlement based upon the grounds of breach, waiver, abandonment, estoppel, and/or futility is without merit.

First, under California law, AIGSIC, as an excess insurer who has no duty to defend, is not equitably estopped from relying on the consent to settle provision of the Primary Policy even where Oracle kept AIGSIC apprised of its settlement strategy and negotiations.  *See Aerojet-General Corp.*, 65 Cal. Rptr. 3d 803 at 814-15 (excess insurer who had no duty to defend and was apprised by its insured of settlement negotiations was not equitably estopped from relying on the "no voluntary payment" provision to deny coverage).

Second, Oracle's reliance upon *Fuller-Austin Insulation Co. v. Highlands Ins. Co.,* 38 Cal. Rptr. 3d 716 (Ct. App. 2006) is misplaced.  Pl.'s Letter to Court In Opposition to AIGSIC's

Request for Pre-motion Conference [ECF Doc. No. 21].  In *Fuller-Austin*, it was undisputed that the insured notified its insurer that settlement negotiations were imminent and invited the insurer to attend.  *Id*. at 723.  There, the court held that because the excess insurer neither acknowledged coverage nor provided a defense, it could not rely on a consent provision "that is designed to protect defending insurers."  *Id*. at 736-37.  However, it was critical to the reasoning of *Fuller-Austin* that the excess insurer had been informed of the impending settlement *and given an opportunity to participate in negotiations* before the insured violated its policy by assuming an obligation under the settlement without its insurer's consent.  *Id*.  Indeed, the court stated "Substantial evidence supports the trial court's finding that appellants were afforded a reasonable opportunity to participate in settlement negotiations."  *Id*. at 740.  Thus, having received fair notice that the insured was contemplating settlement and having been invited to participate in settlement negotiations, the court in *Fuller-Austin* held the insurer could not withhold consent and then deny coverage.

That is plainly not the case here.  AIGSIC was never afforded an opportunity to participate in the settlement of the State Action.  The Complaint fails to expressly allege that Oracle ever invited AIGSIC to participate in settlement negotiations, nor does it allege that Oracle invited AIGSIC to attend the mediation of which it provided notice.  Indeed, Oracle's allegation that it "offered to provide the parties' mediation statements if AIG signed a non-disclosure agreement . . . but AIG did not accept that offer" (Compl. ¶ 47(d)), is insufficient to constitute a "reasonable opportunity to participate in the settlement."  Indeed, the Complaint contains no allegations that AIGSIC was either asked for settlement authority in advance of the mediation or invited to participate in the mediation.  Furthermore, the final settlement terms were

not even reached until after the mediation session occurred, so Oracle's reference to this issue to retroactively justify it previously having failed to obtain consent to settle is a red-herring.

Oracle attempts to circumvent this condition precedent to coverage that it obtain prior consent to settle by simply alleging that AIGSIC "did not make any objection to Oracle moving forward with the settlement or to the terms presented." Compl. ¶ 54. However, while the Complaint alleges that Oracle informed AIGSIC of an "upcoming mediation" "on or about July 20, 2016," no resolution was reached in such mediation, which was apparently held before August 4, 2016. Compl. ¶¶ 50-52. Oracle neither sought AIGSIC's consent to the settlement prior to the failed mediation nor even informed AIGSIC of the settlement it reached in September 2016, until afterwards on September 19, 2016. (*see* Compl. ¶¶ 53, 55). It was not until January 10, 2017, *after* Beazley had agreed to pay Oracle its full policy limit under the Primary Policy to cover defense costs, that Oracle first raised a request to AIGSIC for reimbursement of the settlement. Compl. ¶ 56-57; Hirschorn Decl., Exh. 2.

The Primary Policy imposed no obligation upon AIGSIC to object to a settlement prior to Oracle resolving its dispute; and even if it had, AIGSIC was never provided with any settlement terms to object to until after they had already been agreed to by Oracle. Oracle cannot rely on the holding of *Fuller-Austin* to excuse its non-compliance with the consent to settle provision, when AIGSIC was never asked to participate in settlement negotiations and did not decline to participate, as was the case in *Fuller-Austin*.[5]

---

[5] Oracle also cannot rely on *LMA N. Am., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, P.A.*, 924 F. Supp. 2d 1188 (S.D. Cal. 2013), which is similarly inapposite. In *LMA*, the insured repeatedly requested that National Union fund the $3.75 million in settlement dollars. *Id*. at 1194-95. Indeed, the insured even called National Union during the mediation, to which National Union withheld its consent and expressly told the insured that it did not have authority from National Union to settle. *Id*. at 1193. Again, that is clearly not the case here. Here, Oracle never requested that AIGSIC fund the settlement of the State Action, prior to being informed of the settlement on September 19, 2016. Compl. ¶ 55. Rather, Oracle even admits it waited until January 10, 2017, four months after it entered into the settlement without AIGSIC's consent, to finally request reimbursement from AIGSIC for amounts it paid in settlement of the State Action. Compl. ¶ 57; Hirschorn Decl., Exh. 2.

16

Also critical to the reasoning of *Fuller-Austin* was the court's observation that the insurers' objections to the settlement, and their lack of consent thereto, which was first raised by the insurers in a bankruptcy court proceeding, "could be raised in another forum," *i.e.*, the then-pending coverage litigation. 38 Cal. Rptr. 3d at 740. That is not the case here. Not having been invited to participate in settlement negotiations in the underlying State Action, AIGSIC had no means to participate, much less raise the issue of consent to settlement in the State Action. Here, there was no coverage action pending and thus no "other forum" in which to raise such objections and lack of consent, prior to the settlement of the State Action.

Moreover, *Fuller-Austin* is also distinguishable because it was premised upon a rule applicable only to insurers that had erroneously declined coverage and/or improperly refused to defend: "[I]f an insurer erroneously denies coverage and/or improperly refuses to defend the insured in violation of its contractual duties, the insured is entitled to make a reasonable settlement of the claim in good faith and may then maintain an action against the insurer to recover the amount of the settlement." *Id*. at 736. (citation omitted).

Here, by contrast, AIGSIC: (a) had not violated any duty to defend (because it did not have one), and (b) had not declined coverage (let alone erroneously) at any point prior to September 2016 when Oracle entered into the settlement of the State Action. Accordingly, California law is clear that the insurers are not liable for any obligations assumed in violation of the policies' consent to settle clauses.

Third, AIGSIC did not waive the Primary Policy's consent to settle requirement, as Oracle suggests.[6] California courts have applied the general rule that "waiver requires the

---

[6] Oracle cannot rely on inapposite cases to urge a different result. *Cf. MBIA Inc. v. Fed. Ins. Co.*, 652 F.3d 152, 169-70 (2d Cir. 2011) (where "insurers agreed not to raise [the insured's] lack of written consent as a defense to coverage for [the $75 million settlement estimate of the AHERF investigation]", insured was entitled to presume that insurers would not raise lack of written consent as a defense to coverage for settlement that exceeded the $75

insurer to intentionally relinquish its right to deny coverage and that a denial of coverage on one ground does not, absent clear and convincing evidence to suggest otherwise, impliedly waive grounds not stated in the denial." *Waller v. Truck Ins. Exch., Inc.*, 44 Cal. Rptr. 2d 370, 387 (1995); *Velasquez v. Truck Ins. Exchange,* 5 Cal. Rptr. 2d 1, 6 (1991) ("Whether a waiver has occurred depends solely on the intention of the waiving party. . . .   An intention to waive a limitations provision is not evinced by the failure to raise that point in a letter denying a claim."); *California Union Ins. Co. v. Poppy Ridge Partners*, 274 Cal. Rptr. 191 (1990) (insurer's reliance on particular policy provision to deny coverage does not preclude insurer from later claiming rights under other provisions).[7]

Accordingly, AIGSIC did not waive the Primary Policy's consent to settle requirement, or its right to rely on a lack of consent defense, by not raising lack of consent as a basis for its July 19 and November 10 coverage disclaimers.  AIGSIC sufficiently reserved its rights to rely on other policy provisions and defenses to coverage and thus cannot be precluded from relying on the consent to settle provision as a defense to coverage.

---

million estimate); *State of N.Y. v. AMRO Realty Corp.*, 936 F.2d 1420, 1433 n.13 (2d Cir. 1991) (reservation of rights language in insurer's disclaimer letter could not be read to preclude waiver of late-notice defense because late-notice defense was evident at the time insurer issued the disclaimer).  Here, AIGSIC did not expressly waive its right to rely on a lack of consent to settle defense, nor was AIGSIC's right to rely on a lack of consent to settle defense apparent at the time AIGSIC issued its coverage letters, as Oracle *never* requested indemnity coverage, but rather only sought defense costs coverage.

[7] Nor does New York law, which is where the Excess Policy was negotiated and issued, and which Oracle has cited to support its position, differ from the California authorities cited.  Several New York cases have held that inaction or silence by the insurer is not enough to waive the no consent to settle defense.  In *N.Y. Cent. Mut. Fire Ins. Co. v. Danaher*, 736 N.Y.S.2d 195, 197 (N.Y. App. Div. 3d Dep't 2002), the Third Department held that an insurer's inaction when it knew of its insured's claim and settlement negotiations was not enough to even raise a fact issue that the insurer had waived its right to assert non-compliance with the consent to settle clause (the insured's counsel's "repeated telephonic requests for a copy of Jacob's insurance policy, made prior to the [settlement] . . . and plaintiff's knowledge that defendant had asserted a claim under [the policy]" did not raise a question of fact as to waiver).  Similarly, in *State Farm Auto Insurance Company v. Blanco*, 617 N.Y.S.2d 898, 899 (N.Y. App. Div. 2d Dep't 1994), the court held that the insurer had not waived the requirement of prior written consent to any proposed settlement when the insured had sent the insurer a notice that a settlement "[had] been accepted, unless [the insured] receive[d] objection from [the insurer] within ten days," and the insurer did not object in that ten day period.

Fourth, AIGSIC did not abandon its right to require, nor would it have been futile to obtain, AIGSIC's written consent to settle prior to Oracle entering into the settlement of the State Action.  Oracle cites *Enodis Corp. v. Cont'l Cas. Co.*, 2013 U.S. Dist. LEXIS 83672 (C.D. Cal. June 10, 2013) to support its position that it was legally excused from complying with the consent to settle provision based upon the doctrines of abandonment and futility.  *See* Pl.'s Letter to Court In Opposition to AIGSIC's Request for Pre-motion Conference [ECF Doc. No. 21].  However, *Enodis* directs that "the doctrine of abandonment only applies when (i) an insured makes a demand or request upon its insurer, and (ii) the insurer either ignores or rejects the request."  *See Enodis*, 2013 U.S. Dist. LEXIS 83672, at *16 (citing *Gribaldo, Jacobs, Jones & Associates, et al. v. Agrippina Versicherunges A.G.*, 91 Cal. Rptr. 6, 15 (1970)).  Accordingly, although the court in *Enodis* found that there were genuine issues of fact regarding whether the doctrine of abandonment excused a policyholder from complying with the consent requirement of the no-voluntary payment provision in the insurance policy, the court only allowed the policyholder to pursue the argument that it would have been futile to seek CNA's consent in connection with the "Stefanyshyn" settlement payment in 2009 based on the fact that "in connection with the . . . 2007 summary judgment motion, CNA took the position that it would never provide Enodis with indemnity related to the <u>Stefanyshyn</u> matter".  *Id*. at *18, 20.

Here, AIGSIC has never ignored or rejected an indemnity request by Oracle, simply because Oracle has never made a request to AIGSIC for indemnification of the settlement of the State Action until several months after the settlement was entered into.[8]  Thus, Oracle has no basis to claim, nor does the Complaint sufficiently plead, that the doctrines of abandonment or futility apply to excuse its compliance with the Primary Policy's consent to settle provision.

---

[8]  Indeed, as Oracle conceded, AIGSIC's coverage letters only disclaimed coverage of submitted legal fees (Claims Expenses, not damages or settlement costs), on grounds that, *inter alia*, they did not exceed the self-insured retention and Primary Policy limits.  Compl. ¶ 61.

Plainly, Oracle cannot claim it was legally excused from obtaining AIGSIC's written consent prior to the settlement of the State Action, and its failure to obtain such written consent was a direct breach of the Primary Policy's consent to settle provision, relieving AIGSIC of any duty to indemnify Oracle for the $35 million it paid in connection with the Settlement.  Nor can AIGSIC be precluded from relying on the consent to settle provision as a defense to coverage. Such a result would be contrary to California law, and would vitiate consent clauses found in virtually all non-duty-to-defend, liability insurance policies.

## CONCLUSION

For the reasons set forth above, Defendant respectfully requests that the Court grant its motion to partially dismiss the First Cause of Action of the Complaint, to the extent it seeks declaratory relief as to indemnification of Settlement Costs, and to dismiss the Third Cause of Action for breach of contract, for failure to state a claim.

Dated: New York, NY
      July 19, 2018

Respectfully submitted,

**BRESSLER, AMERY & ROSS, P.C.**

By:    */s/ Robert Novack*
      Robert Novack, Esq.
      Charles W. Stotter, Esq.
      Christina D. Gallo, Esq.

17 State Street
New York, NY 10004
T: (212) 425-9300
F: (212) 425-9337

*Attorneys for Defendant AIG Specialty Insurance Company (f/k/a Chartis Specialty Insurance Company)*

4915457

20