UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ORACLE CORPORATION,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>CHARTIS SPECIALTY INSURANCE<br>COMPANY,<br><br>　　　　　Defendant. | Civil Action No. 1:18-CV-03440-GHW<br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANT AIG SPECIALTY INSURANCE COMPANY'S (F/K/A CHARTIS SPECIALTY INSURANCE COMPANY) MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

BRESSLER, AMERY & ROSS, P.C.
17 State Street
New York, New York  10004
T: (212) 425-9300
F: (212) 425-9337

*Attorneys for Defendant*
*AIG Specialty Insurance Company (f/k/a*
*Chartis Specialty Insurance Company)*

On the Brief:

Robert Novack, Esq.
Charles W. Stotter, Esq.
Christina D. Gallo, Esq.

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................. ii

PRELIMINARY STATEMENT ....................................................................................... 1

STATEMENT OF FACTS ............................................................................................... 3

A. THE POLICIES ......................................................................................................... 3

B. THE UNDERLYING LAWSUITS ........................................................................... 5

C. COVERAGE CORRESPONDENCE ........................................................................ 7

LEGAL ARGUMENT ...................................................................................................... 8

   I.   ORACLE CANNOT CARRY ITS HEAVY BURDEN ON THIS MOTION ............. 8

   II.   ORACLE IS NOT ENTITLED TO PARTIAL JUDGMENT ON THE
       PLEADINGS BECAUSE THE OFCA CLAIMS DO NOT FALL WITHIN
       THE PRIMARY POLICY'S INSURING CLAUSES ................................................. 8

       A.  Coverage Under The Primary Policy Is Limited To Negligent Or Unintentional
          Conduct ................................................................................................................. 9

          1.  Insuring Clause I.B Is The Only Applicable Insuring Clause, Even
               Though The Result is The Same Under Insuring Clause I.A. .................... 9

          2.  The Term "Negligent" Modifies The Terms "Act", "Error",
               "Omission", "Misstatement" and "Misleading Statement." ..................... 11

        B.  The Mere Existence of Exclusion A Cannot Create Coverage For Claims
          Expenses Where the Insuring Clause Is Not Triggered In The First Instance ...... 16

   III. THE OFCA CLAIMS IN THE STATE ACTION COMPLAINT DO NOT
       ALLEGE NEGLIGENT OR UNINTENTIONAL CONDUCT ................................. 17

   IV. AIGSIC HAS NO DUTY TO ADVANCE DEFENSE COSTS FOR
       "POTENTIALLY COVERED" CLAIMS .............................................................. 21

   V.  SEVERAL EXCLUSIONS PRECLUDE PARTIAL JUDGMENT ON THE
       PLEADINGS ............................................................................................................ 22

CONCLUSION ............................................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acordia Ne., Inc. v. Thesseus Int'l Asset Fund NV, Inc.*,
  2003 U.S. Dist. LEXIS 15314 (S.D.N.Y. Sept. 2, 2003)..........................................13

*Barber v. RLI Ins. Co.*,
  No. 1:06-CV-630, 2008 U.S. Dist. LEXIS 104128 (N.D.N.Y. Dec. 22, 2008)......................23

*Benefit Sys. & Servs. v. Travelers Cas. & Sur. Co. of Am.*,
  2009 U.S. Dist. LEXIS 34213 (N.D. Ill. Apr. 22, 2009) ....................................13, 15

*Braden Partners, LP v. Twin City Fire Ins. Co.*,
  2016 U.S. Dist. LEXIS 180958 (N.D. Cal. Dec. 20, 2016)....................................22

*Cashman v. Bayland Bldgs., Inc.*,
  2016 U.S. Dist. LEXIS 63017 (E.D. Wis. May 12, 2016)......................................13

*Catlin Specialty Ins. Co. v. CBL & Assocs. Props.*,
  2017 Del. Super. LEXIS 471 (Del. Super. Ct. Sep. 20, 2017)................................9

*David v. Rabuffetti*,
  2011 U.S. Dist. LEXIS 38555 (S.D.N.Y. Mar. 30, 2011) .....................................8

*DeSantis Enters. v. Am. & Foreign Ins. Co.*,
  661 N.Y.S.2d 92 (N.Y. App. Div. 3d Dep't 1997) ..........................................9

*Dollar Phone Corp. v. St. Paul Fire & Marine Ins. Co.*,
  2012 U.S. Dist. LEXIS 45591 (E.D.N.Y. Mar. 9, 2012) .....................................9

*Downey Venture v. LMI Ins. Co.*,
  78 Cal. Rptr. 2d 142 (Ct. App. 1998) (Pl. Br. ) .........................................18

*Employers Reins. Corp. v. Teague*,
  1992 U.S. App. LEXIS 19294 (4th Cir. Aug. 14, 1992) .....................................14

*Falls Riverway Realty, Inc. v. City of Niagara Falls*,
  754 F.2d 49, 55 (2d Cir. 1985)..........................................................8

*Fid. Nat'l Fin., Inc. v. Nat'l Union Fire Ins. Co.*,
  2014 U.S. Dist. LEXIS 140030 (S.D. Cal. Sept. 30, 2014)..................................8

*Forest Meadows Owners Ass'n v. State Farm Gen. Ins. Co.*,
  2012 U.S. Dist. LEXIS 50911 (E.D. Cal. Apr. 11, 2012)................................12, 15

*Golf Course Supt's Ass'n v. Underwriters at Lloyd's London*,
  761 F. Supp. 1485 (D. Kan. 1991)................................................13, 14, 15, 16

*Grp. Voyagers, Inc. v. Employers Ins. of Wausau*,
  2002 U.S. Dist. LEXIS 3674 (N.D. Cal. Mar. 4, 2002), *aff'd*, 66 F. App'x 740
  (9th Cir. 2003) ................................................................................................................13, 19, 20

*Haynes v. Farmers Ins. Exch.*,
  13 Cal. Rptr. 3d 68 (2004) ................................................................................................12

*Hurley Constr. Co. v. State Farm Fire & Cas. Co.*,
  12 Cal. Rptr. 2d 629 (Ct. App. 1992) ................................................................................17

*Jeff Tracy, Inc. v. U.S. Specialty Ins. Co.*,
  636 F. Supp. 2d 995 (C.D. Cal. 2009) ................................................................................21

*La Mirada Prods. Co. v. Wassall PLC*,
  823 F. Supp. 138 (S.D.N.Y. 1993) ......................................................................................8

*Mirpad, LLC v. Cal. Ins. Guarantee Ass'n*,
  132 Cal. App. 4th 1058 (2005) ..........................................................................................17

*Oak Park Calabasas Condo. Assn. v. State Farm Fire & Cas. Co.*,
  40 Cal. Rptr. 3d 263 (Ct. App. 2006) ................................................................................13

*Office Depot, Inc. v. AIG Specialty Ins. Co.*,
  722 F. App'x 745 (9th Cir. 2018) (Pl. Br. ) ......................................................................19

*Petersen v. Columbia Cas. Co.*,
  2012 U.S. Dist. LEXIS 120033, 2012 WL 5316352 (C.D. Cal. Aug. 21, 2012)..............21, 22

*ProCentury Ins. Co. v. Cuk*,
  2014 U.S. Dist. LEXIS 186938 (C.D. Cal. Apr. 29, 2014) ................................................13

*Ray v. Valley Forge Ins. Co.*,
  92 Cal. Rptr. 2d 473 (Ct. App. 1999) ................................................................................16

*Royalty Carpet Mills, Inc. v. ACE Am. Ins. Co.*,
  2017 WL 4786107 (C.D. Cal. July 17, 2017) ....................................................................22

*Safeco Ins. Co. of Am. v. Robert S.*,
  28 P.3d 889 (Cal. 2001) ..............................................................................................17, 18

*Shell Oil Co v. Winterthur Swiss Ins. Co.*,
  15 Cal. Rptr. 2d 815 (Ct. App. 1993) ................................................................................18

*Siebert v. Gene Sec. Network, Inc.*,
  75 F. Supp. 3d 1108 (N.D. Cal. 2014) ................................................................................18

*St. Paul Fire & Marine Ins. Co. v. Coss*,
  145 Cal. Rptr. 836 (Ct. App. 1978) ....................................................................................16

iii

*Stanford Ranch v. Md. Cas. Co.*,
  89 F.3d 618 (9th Cir. 1996) ..................................................................................16

*Waller v. Truck Ins. Exch.*,
  44 Cal. Rptr. 2d 370 (1995) ..................................................................................12

*United States Fidelity & Guaranty Co. v. Fireman's Fund Ins. Co.*,
  896 F.2d 200 (6th Cir. 1990) ................................................................................13

*Ward Gen. Ins. Servs., Inc. v. Employers Fire Ins. Co.*,
  7 Cal. Rptr. 3d 844 (Ct. App. 2003) .....................................................................12

*Wash. Educ. Ass'n v. Nat'l Right to Work Legal Def. Found., Inc.*,
  187 F. App'x 681 (9th Cir. 2006) ..........................................................................12

*Watkins Glen Cent. Sch. Dist. v. Nat'l Union Fire Ins. Co.*,
  732 N.Y.S.2d 70 (N.Y. App. Div. 2d Dep't 2001) .................................................9

**Statutes**

California False Claims Act ............................................................................................19

California Insurance Code Section 533 .......................................................................18, 19, 20

Oregon False Claims Act ................................................................................................1

Defendant AIG Specialty Insurance Company ("AIGSIC") submits this memorandum of law in opposition to Plaintiff Oracle Corporation's motion for partial judgment on the pleadings.

## PRELIMINARY STATEMENT

Oracle's motion seeks partial judgment that seven claims against Oracle in the underlying State Action, alleging violations of the Oregon False Claims Act (the "OFCA Claims"), are covered under the AIGSIC excess professional and technology services errors and omissions liability policy ("Excess Policy"), which follows form to an underlying primary policy issued by Beazley ("Primary Policy").  Oracle is wrong.  The OFCA Claims do not fall within any of the Primary Policy's Insuring Clauses and are otherwise excluded from coverage.

First, the Primary Policy's Insuring Clauses I.A and I.B only provide coverage for *negligent* and *unintentional* conduct.  Insuring Clause I.A provides coverage for "any negligent act, error or omission, *misstatement or misleading statement* or any unintentional breach of contract, in rendering or failure to render Professional Services or Technology Based Services  . . . ." (emphasis added).  Similarly, Insuring Clause I.B provides coverage for "any negligent act, error or omission, or unintentional breach of contract . . . that results in the failure of Technology Products to perform the function or serve the purpose intended."  Neither Insuring Clause covers the OFCA Claims, which are not rooted in negligence.[1]

---

[1] Oracle's motion mistakenly addresses Insuring Clause I.A, which is not the applicable Insuring Clause.  The allegations in the State Action Complaint arise out of Oracle's *creation and development* of technology software "products" that failed to perform as promised, to which Insuring Clause I.B applies.  The allegations do not arise out of any "Professional Service" or "Technology Based Service" which would otherwise be addressed by Insuring Clause I.A.  Nor do Insuring Clauses I.C or I.D apply (neither of which are at issue in this matter).  The Beazley and AIGSIC coverage letters analyzed Oracle's claims under Insuring Clause I.B (Declaration of Deborah Hirschorn, dated August 9, 2018 ("Hirschorn Decl."), Exh. 1 (June 16, 2015 Letter); Declaration of Robin L. Cohen in Support of Plaintiff's Motion for Partial Judgment on the Pleadings, dated July 20, 2018 [Dkt. #47] ("Cohen Decl."), Exh. B (July 19, 2017 letter) [Dkt. #47-2]), with no reference to Insuring Clause I.A.  Notably, Oracle did not object, or provide any pushback to the insurers' sole application of Insuring Clause I.B.  For the first time in its Complaint,

Oracle mistakenly argues that the term "negligent" in Insuring Clause I.A only modifies the terms "act, error or omission" and does not modify the terms "misstatement or misleading statement," thereby expanding coverage to include not only negligent conduct, but intentional conduct as well.  But California courts have uniformly held that the initial modifier "negligent" is applicable to all nouns or phrases that follow.

Second, the OFCA Claims do not fall within the Primary Policy's Insuring Clause I.A (nor do they fall within Insuring Clause I.B) because they do not allege *negligent* or *unintentional* conduct.  Negligent conduct is not proscribed by the OFCA statute and was not alleged in the State Action Complaint.  The State Action Complaint does not allege that Oracle acted negligently, but rather that Oracle made statements, demonstrations, or representations "with actual knowledge that they were false, with deliberate ignorance of their falsity, or with reckless disregard of their falsity."

Third, the Primary Policy does not contain a duty to defend.  AIGSIC had no duty to advance defense costs for "potentially covered" claims that alleged wrongful conduct where the policy expressly (i) requires the insurer's consent to legal fees incurred, and (ii) specifically provides for the allocation of covered and uncovered losses between the insured and insurer.  Under California law, an insurer is only obligated to advance defense costs for claims that are actually covered prior to the final disposition of the claim.  Moreover, the terms of the Primary Policy only provide a duty to advance defense costs *prior* to final disposition of the underlying claim.  Oracle never requested reimbursement of Claims Expenses until *after* the final

---

Oracle advanced Insuring Clause I.A (in addition to Insuring Clause I.B), but only relies on the language of Insuring Clause I.A (for its addition of the terms "misstatement" and "misleading statement") in this motion.  Nevertheless, the analysis is the same as neither Insuring Clause is triggered by the OFCA Claims.

disposition of the State Action.   Accordingly, AIGSIC was not obligated to advance defense costs for uncovered claims.

Fourth, even if Oracle's alleged conduct somehow triggered any of the Primary Policy's Insuring Clauses, several exclusions contained in the Primary Policy and raised in this action as affirmative defenses preclude coverage.   Oracle has not sought to strike those affirmative defenses nor sought any other relief with respect to those exclusions.

Accordingly, Oracle's motion for partial judgment on the pleadings as to the OFCA Claims must be denied.

## STATEMENT OF FACTS

### A. THE POLICIES

Certain Underwriters at Lloyd's, Syndicates 623 and 2623, subscribing to Policy No. QF009013 ("Beazley") issued to Oracle a Professional and Technology Based Services, Technology Products, Computer Network Security, Privacy Liability and Multimedia and Advertising Liability Insurance Policy for the policy period of March 31, 2013 to March 31, 2014 (the Primary Policy).   Compl. [Dkt. #1] ¶ 15; *see also* Compl., Exh. A.  Chartis Specialty Insurance Company ("Chartis", n/k/a AIGSIC) issued to Oracle the Excess Policy, No. 01-842-68-53, for the policy period of March 31, 2013 to March 31, 2014, which follows form to, and incorporates the Primary Policy's terms, conditions, definitions, limitations, and exclusions. Compl. ¶¶ 15, 17, 18; *see also* Compl., Exh. B.  The Excess Policy provides the first layer of excess coverage to Oracle, in excess of the Primary Policy limits of liability and a self-insured retention.  Compl. ¶ 17; *see also* Compl., Exh. B.

The Primary Policy provides claims made and reported coverage to Oracle for "Claims first made against the Insured and reported to the Underwriters during the Policy Period."

Compl., Exh. A.  The Primary Policy's Insuring Clause I.A specifically provides coverage for

Damages and Claims Expenses, "in excess of the Each Claim Deductible":

> which the Insured shall become legally obligated to pay because of any Claim first made against any Insured and reported in writing to the Underwriters during the Policy Period . . . *arising out of any negligent act, error or omission, misstatement or misleading statement or any unintentional breach of contract, in rendering or failure to render Professional Services or Technology Based Services* . . . by the Insured. . .

*Id*., § I.A (emphasis added).  The Primary Policy defines "Professional Services" as follows:

> "Professional Services" means professional services performed for others by or on behalf of the Insured Organization for a fee . . . *but does not include Technology Based Services*, Media Activities, *any services involving the creation, development, sale, distribution, installation, licensing, or manufacturing of Technology Products*. . .

*Id*., § VI.U (emphasis added).   The Primary Policy defines "Technology Based Services" as

follows:

> "Technology Based Services" means computer and electronic technology services, including data processing, Internet services, cloud services, data and application hosting, computer systems analysis, security strategy and services, technology consulting and training, custom software programming for a specific client of the Insured Organization, computer and software systems installation and integration, computer and software support, and network management services performed by the Insured. . . for others for a fee . . . , *but shall not mean Technology Products*.

*Id*., § VI.Z (emphasis added).

In addition, the Primary Policy's Insuring Clause I.B provides coverage for Damages and

Claims Expenses, in excess of the Deductible:

> which the Insured shall become legally obligated to pay because of any Claim first made against any Insured and reported to the Underwriters during the Policy Period . . . arising out of:
>
> 1.  any negligent act, error or omission, or any unintentional breach of contract, by the Insured . . . that results in the failure of *Technology Products* to perform the function or serve the purpose intended; or

4

> 2. infringement of copyright committed by the Insured . . . with respect to software Technology Products.

*Id.*, § I.B (emphasis added).  The Primary Policy defines "Technology Products" as follows:

> "Technology Products" means a computer or telecommunications hardware or software product, or related electronic product that is created, manufactured or developed by the Insured Organization for others, or distributed, licensed, leased or sold by the Insured Organization to others for compensation . . . including software updates, service packs and other maintenance releases and training provided for such products.

*Id.*, § VI.AA.  The Primary Policy further provides several exclusions from coverage, including that coverage does not apply to Damages or Claims Expenses in connection with or resulting from any Claim:

> A. With respect to Insuring Clauses A., B. and D., arising out of or resulting from any criminal (except where such criminal act is based on unintentional conduct) dishonest, fraudulent or malicious act, error or omission committed by any Insured; however, this Policy shall apply to Claims Expenses incurred in defending any such Claim alleging the foregoing until such time as there is a final adjudication, judgment, binding arbitration decision or conviction against the Insured, or written admission by the Insured, establishing such conduct . . .

*Id.*, § V.A.  The Primary Policy also contains exclusions precluding coverage for, *inter alia*, Damages or Claims Expenses arising out of a contractual liability or obligation (Exclusion E), a breach of warranty (Exclusion F), inaccurate description of price of goods, cost representations or estimates, or failure to conform to represented quality or performance (Exclusion G), false, deceptive or unfair trade practices, or false or deceptive or misleading advertising (Exclusion K), and alleged violation of RICO or any similar federal or state law (Exclusion N).  *Id.*, § V.

**B.  <u>THE UNDERLYING LAWSUITS</u>**

In early 2009, the State of Oregon allegedly began investigating software options for a project by which it would modernize its delivery of certain social services programs.  Compl. ¶ 28.  Thereafter, the State of Oregon allegedly hired Oracle to assist in implementing the software

5

solutions for both the Modernization and Cover Oregon Projects.  Compl. ¶ 29.[2]  Allegedly the two projects encountered political and technical problems giving rise to a dispute between Oracle and the State of Oregon, although "the Oracle system was ready for public release."  Compl. ¶ 30.  By the end of February 2014, the State of Oregon allegedly chose not to launch the public website and announced its decision to "abandon the Oracle system."  Compl. ¶¶ 30-31.  The State's decision to abandon the Oracle system led to a disagreement over invoices.  *Id.*

Oracle became involved in various lawsuits arising from its work performed for the State of Oregon between 2010 and 2014 in connection with Oregon's healthcare insurance exchange (the Cover Oregon Project), and the related Modernization Project.  Compl. ¶ 2.  One of the seven underlying lawsuits for which Oracle seeks defense cost and indemnity coverage, collectively known as the Cover Oregon Lawsuits, is styled *Rosenblum, et al. v. Oracle America, Inc., et al.*, Case No. 14-cv-20043 (Or. Cir. Ct., Marion Cnty.), filed in August 2014 (the "State Action").  *Id.*  Seven causes of action in the State Action Complaint (Claims for Relief 3-9) allege violations of the Oregon False Claims Act.  Indeed, the OFCA Claims each allege that Oracle knowingly or recklessly made false statements or claims regarding its work for the State of Oregon.  Cohen Decl., Exh. A [Dkt. No. 47-1].  Specifically, the OFCA Claims each allege that Oracle made statements, demonstrations, or representations "with actual knowledge that they were false, with deliberate ignorance of their falsity, or with reckless disregard of their falsity."  *Id.*, ¶¶ 215, 236, 243, 252, 257, 264, 272.  The OFCA Claims do not allege that Oracle acted negligently.  *Id.*

---

[2] The Modernization Project was to modernize Oregon's health and human services IT systems (Compl. ¶ 2) and the Cover Oregon Project was in connection with Oregon's healthcare insurance exchange.  *Id.*

## C. <u>COVERAGE CORRESPONDENCE</u>

On March 28, 2014, Oracle first reported a notice of circumstances to AIGSIC, informing it of potential claims arising from Oracle's provision of software, consulting, and other services to the State of Oregon for the Cover Oregon Project and Modernization Project.  Compl. ¶ 43. AIGSIC promptly acknowledged notice of the dispute on April 10, 2014.  *Id.*, ¶ 45.  Thereafter, on August 18, 2014, AIGSIC issued a reservation of rights letter to Oracle, acknowledging that AIGSIC's Excess Policy followed form to the Primary Policy, requesting copies of Oracle's coverage communications with Beazley (the primary insurer) and information regarding the status of this claim, including status reports drafted by Beazley or defense counsel.  Compl. ¶ 46.

The Complaint alleges that, on or about September 19, 2016, Oracle informed AIGSIC that it had ultimately settled the State Action with a $35 million cash component, and that all the Cover Oregon Lawsuits had been dismissed.  Compl. ¶ 55.  The Complaint acknowledged that it was not until January 10, 2017, after Beazley agreed to pay the full limits of the Primary Policy, that Oracle sought reimbursement from AIGSIC for defense costs (*i.e.* Claims Expenses) and amounts paid in Settlement of the State Action (*i.e.* Damages).  Compl. ¶ 56-57.[3]

AIGSIC issued a coverage letter on July 19, 2017 disclaiming coverage of the legal fee invoices because: (i) Claims Expenses for the affirmative lawsuits filed by Oracle were not covered under the Excess Policy; (ii) certain exclusions in the Primary Policy preclude coverage; and (iii) Claims Expenses sought under the Excess Policy for potentially covered claims did not

---

[3] Contrary to Oracle's inference, Beazley's initial coverage letter only accepted coverage for breach of contract claims under Insuring Clause I.B (not under I.A as Oracle now seeks from AIGSIC), and denied coverage for all other claims based upon Primary Policy terms, exclusions, and allocations between covered and uncovered claims. *See* Hirschorn Decl., Exh. 1 at pp. 1, 11.  Oracle's demand to AIGSIC for reimbursement came only after Beazley agreed to pay the full limits of the Primary Policy.  Compl. ¶ 57.

exceed the self-insured retention plus the total limits of the Primary Policy.  Compl. ¶ 61; *see* Cohen Decl., Exh. B [Dkt. #47-2].  AIGSIC denied coverage for the seven OFCA Claims because "these claims are not premised upon negligence or an 'unintentional' breach of contract, and therefore do not fall under the insuring agreement of the Beazley Policy.  Further, coverage is precluded under Exclusions E, F, G, K, and N of the Beazley Policy." *Id.,* Dkt. #47-2 at p. 10 of 12; *see also* Compl. Exh. A.  On November 10, 2017, AIGSIC issued a supplemental coverage letter reaffirming its prior coverage position that no reimbursement of the submitted legal fee invoices was due under the Excess Policy because AIGSIC's coverage layer had not been reached.  Compl. ¶ 63.

## LEGAL ARGUMENT

### I.   ORACLE CANNOT CARRY ITS HEAVY BURDEN ON THIS MOTION

A plaintiff's motion for judgment on the pleadings is exceedingly rare and necessarily carries a heavy burden.  A plaintiff must establish entitlement to judgment on the pleadings based solely on the facts pleaded in the complaint, and admitted in defendant's answer.  *See David v. Rabuffetti*, 2011 U.S. Dist. LEXIS 38555, at *9 (S.D.N.Y. Mar. 30, 2011) (denying plaintiff's motion for judgment on the pleadings for a declaratory action where defendant denied the pertinent allegations in the Complaint); *see also La Mirada Prods. Co. v. Wassall PLC*, 823 F. Supp. 138, 140 (S.D.N.Y. 1993) (*citing Falls Riverway Realty, Inc. v. City of Niagara Falls*, 754 F.2d 49, 55 (2d Cir. 1985)).

### II.   ORACLE IS NOT ENTITLED TO PARTIAL JUDGMENT ON THE PLEADINGS BECAUSE THE OFCA CLAIMS DO NOT FALL WITHIN THE PRIMARY POLICY'S INSURING CLAUSES

Errors  and  omissions insurance  policies generally  provide  coverage  for  acts  of negligence, not intentional acts.  *See e.g., Fid. Nat'l Fin., Inc. v. Nat'l Union Fire Ins. Co.*, 2014 U.S. Dist. LEXIS 140030, at *6 (S.D. Cal. Sept. 30, 2014) (an errors and omissions

"policy covers any losses caused by an [insured's] negligence, *and excludes claims arising out of a dishonest act.*") (emphasis added); *Dollar Phone Corp. v. St. Paul Fire & Marine Ins. Co.*, 2012 U.S. Dist. LEXIS 45591, at *39 (E.D.N.Y. Mar. 9, 2012) ("it is understood that '[e]rrors and omissions policies generally provide coverage for acts of negligence and do not insure against intentional acts.'"); *Watkins Glen Cent. Sch. Dist. v. Nat'l Union Fire Ins. Co.*, 732 N.Y.S.2d 70, 72 (N.Y. App. Div. 2d Dep't 2001); *DeSantis Enters. v. Am. & Foreign Ins. Co.*, 661 N.Y.S.2d 92, 94 (N.Y. App. Div. 3d Dep't 1997) ("The nature of an errors and omissions policy is to … not cover intentional conduct.") (internal citations omitted); *Catlin Specialty Ins. Co. v. CBL & Assocs. Props.*, 2017 Del. Super. LEXIS 471, at *20 (Del. Super. Ct. Sep. 20, 2017) ("a [liability] policy covering 'negligent acts, errors or omissions' does not cover intentionally wrongful conduct."). Here, the Primary Policy is an Errors and Omissions policy; it does not insure against intentional acts.

## A. Coverage Under The Primary Policy Is Limited To Negligent Or Unintentional Conduct

### 1. Insuring Clause I.B Is The Only Applicable Insuring Clause, Even Though The Result is The Same Under Insuring Clause I.A.

Insuring Clause I.B provides coverage for "any negligent act, error or omission, or any unintentional breach of contract . . . that results in the failure of Technology Products to perform the function or serve the purpose intended." It is the only applicable Insuring Clause of the Primary Policy (*see* Cohen Decl., Exh. B) because the allegations in the State Action Complaint arise out of Oracle's *creation and development* of a "Technology Product" that failed to perform as promised, as opposed to any "Professional Services" or "Technology Based Services" provided by Oracle.

The Primary Policy defines "Technology Products" as "a computer or telecommunications hardware or *software product*, or related electronic product that is *created,*

*manufactured or developed by the Insured Organization for others*, or distributed, licensed, leased or sold by the Insured Organization to others for compensation . . . including software updates, service packs and other maintenance releases and training provided for such products." Compl., Exh. A, § VI.AA (emphasis added).

The premise of the State Action Complaint is that Oracle claimed to have a so-called "Oracle Solution for Oregon," which it lied about when stating that it could meet the state's needs "with Oracle products that worked 'out-of-the-box'" and when Oracle "said its products . . . required little customization and could be set up quickly."  Cohen Decl., Exh. A, ¶¶ 2-3.  The State Action Complaint also alleged Oracle's role in the development of technology and software products for the State of Oregon, and demonstrated how the OFCA claims arose out of representations concerning that technology development.  *See id.*, ¶ 6  (Oracle "[took] the lead in proposing system architecture, *selecting software and hardware* . . . ;" "From 2011 on, Oracle . . . was responsible for the *development of the technology*.  Oracle … tightly controlled access to the *software development environments* . . . . ") (emphasis added).  The State Action Complaint further alleged that "the collection of products that Oracle called the 'Oracle Solution' . . . did not work 'out-of-the-box,'" and that Oracle's claims about them "were patently and categorically false."  *Id.*, ¶ 12; *see id.,* ¶¶ 1, 3, 4.  Moreover, Oracle acknowledges in its Complaint here that "the State of Oregon … hired Oracle to assist the State in *implementing the software solutions* for both the Modernization and Cover Oregon Projects."  Compl. ¶ 29.  Indeed, Oracle further alleges that although "*the Oracle system* was ready for public release," the State of Oregon chose not to launch the public website and announced its decision to "abandon *the Oracle system*."  *Id.*, ¶¶ 30-31 (emphasis added).

Accordingly, the State Action Complaint arises out of the alleged failure of a software solutions product (Technology Product) that was developed and implemented by Oracle to perform as promised, to which Insuring Clause I.B applies.  The State Action Complaint *does not* arise out of "Professional Services" or "Technology Based Services" offered by Oracle, that would otherwise be addressed by Insuring Clause I.A.[4]  In addition to citing Insuring Clause I.B, Oracle advances Insuring Clause I.A for the first time in its Complaint.  On this motion, Oracle only addresses Insuring Clause I.A in an effort to broaden the scope of coverage available under the Primary Policy, relying on the addition of the terms "misstatement" or "misleading statement" which do not exist in the language of Insuring Clause I.B.

In any event, coverage under both Insuring Clauses (I.A and I.B) is limited to negligent or unintentional conduct, neither of which are alleged in the OFCA Claims in the State Action Complaint.

### 2. The Term "Negligent" Modifies The Terms "Act", "Error", "Omission", "Misstatement" and "Misleading Statement."

Oracle attempts to broaden the scope of coverage under the Primary Policy's Insuring Clause I.A, which provides coverage for Claims Expenses arising out of "any negligent act, error

---

[4]  The Primary Policy provides that "'Professional Services' means professional services performed for others by or on behalf of the Insured Organization for a fee . . . *but does not include* Technology Based Services, Media Activities, *any services involving the creation, development, sale, distribution, installation, licensing, or manufacturing of Technology Products*. . ." Compl., Exh. A (emphasis added).  Here, as alleged in the State Action Complaint, Oracle's work involved the creation and development of Technology Products.  Therefore, Oracle's work cannot constitute a "Professional Service" as defined by the Primary Policy.  The Primary Policy further provides that "'Technology Based Services' means computer and electronic technology services, including data processing, Internet services, cloud services, data and application hosting, computer systems analysis, security strategy and services, technology consulting and training, custom software programming for a specific client of the Insured Organization, computer and software systems and installation and integration, computer and software support, and network management services performed by the Insured. . . for others for a fee . . ., *but shall not mean Technology Products*." *Id.* (emphasis added).  Here, Oracle did not perform any of the services listed in the exhaustive list contained within the "Technology Based Services" definition.  Therefore, Oracle's work cannot constitute a "Technology Based Service" as defined by the Primary Policy.

or omission, misstatement or misleading statement or any unintentional breach of contract, in rendering or failure to render Professional Services or Technology Based Services. . ." (Compl., Exh. A, § I.A).  Oracle argues that coverage under Insuring Clause I.A is not limited to negligent conduct, but rather extends to intentional conduct, because the term "negligent" in the Insuring Clause does not modify the terms "misstatement or misleading statement."  However, in light of well-established rules of syntax and contract interpretation, Oracle is wrong.

It is well-established that when interpreting a particular insurance policy provision, the court should give "its words their ordinary and popular sense except where they are used by the parties in a technical or other special sense."  *Haynes v. Farmers Ins. Exch.*, 13 Cal. Rptr. 3d 68, 72 (2004); *see also* Pl. Br. at 9.  Thus, insurance policy interpretation requires looking to the language of the contract in order to ascertain its plain meaning or *the meaning a layperson would ordinarily attach to it.  Waller v. Truck Ins. Exch.*, 44 Cal. Rptr. 2d 370, 378 (1995).

Moreover, when interpreting a phrase that includes an initial modifier, "[m]ost readers expect the first adjective in a series of nouns or phrases to modify each noun or phrase in the following series unless another adjective appears."  *Ward Gen. Ins. Servs., Inc. v. Employers Fire Ins. Co.,* 7 Cal. Rptr. 3d 844, 849 (Ct. App. 2003).  Based upon this expectation of a layperson, courts have found that under generally accepted rules of syntax, an initial modifier "will tend to govern all elements in the series unless it is repeated for each element." *Wash. Educ. Ass'n v. Nat'l Right to Work Legal Def. Found., Inc.*, 187 F. App'x 681, 682 (9th Cir. 2006).

Indeed, both state and federal courts in California have read the phrase "negligent act, error or omission" in an insurance policy's insuring agreement as equivalent to "negligent act, negligent error, or negligent omission."  *See Forest Meadows Owners Ass'n v. State Farm Gen.*

*Ins. Co.*, 2012 U.S. Dist. LEXIS 50911, at *13 (E.D. Cal. Apr. 11, 2012) (finding that "'any negligent acts, errors, omissions or breach of duty' clearly meant 'negligent acts, negligent errors, negligent omissions or negligent breaches of duty'"); *Oak Park Calabasas Condo. Assn. v. State Farm Fire & Cas. Co.*, 40 Cal. Rptr. 3d 263 (Ct. App. 2006) (finding that "any negligent acts, errors, omissions or breach of duty" was limited to "conduct sounding in negligence"); *Grp. Voyagers, Inc. v. Employers Ins. of Wausau*, 2002 U.S. Dist. LEXIS 3674, *13 (N.D. Cal. Mar. 4, 2002), *aff'd*, 66 F. App'x 740 (9th Cir. 2003) (finding that "negligent act, error or omission" means "negligent act, negligent error, or negligent omission"); *ProCentury Ins. Co. v. Cuk*, 2014 U.S. Dist. LEXIS 186938, at *18-19 (C.D. Cal. Apr. 29, 2014) (finding that the policy's definition of "Wrongful Act," which included "actual or alleged negligent act, error, breach of duty or omission," encompassed negligent, but not intentional, misconduct).[5]

In *Grp. Voyagers, Inc.*, the insured argued that the word "negligent" only modified the word immediately following it ("act"), and not the words "errors or omissions." 2002 U.S. Dist. LEXIS 3674, at *12-13. The insured in *Grp. Voyagers* had emphasized that the comma following the word "act" indicated a separation between the phrase "negligent act" and "error or

---

[5] Courts in other jurisdictions have accepted the majority view and uniformly held that the term "negligent" modifies the words that follow it. *See Benefit Sys. & Servs. v. Travelers Cas. & Sur. Co. of Am.*, 2009 U.S. Dist. LEXIS 34213, at *14-15 (N.D. Ill. Apr. 22, 2009) (where Wrongful Act in a professional liability policy was defined as "any actual or alleged negligent act, *misstatement, misleading statement*, error or omission in the rendering or failure to render Professional Services," the term "negligent" modified every word in the series such that "a Wrongful Act must be negligent, no matter whether it is called an act, *misstatement, false statement*, omission or error") (emphasis added); *Acordia Ne., Inc. v. Thesseus Int'l Asset Fund NV, Inc.*, 2003 U.S. Dist. LEXIS 15314, at *5 (S.D.N.Y. Sept. 2, 2003) (adopting the majority view that the adjective "negligent" unambiguously modifies "act", "error", and "omission"); *Cashman v. Bayland Bldgs., Inc.*, 2016 U.S. Dist. LEXIS 63017, at *19 (E.D. Wis. May 12, 2016) (the term "negligent" in general liability policies of insurance modifies not just the word "act" but also the words that follow). *See also United States Fidelity & Guaranty Co. v. Fireman's Fund Ins. Co.*, 896 F.2d 200, 203 (6th Cir. 1990) ("only reasonable construction of" ['negligent act, error or omission'] is that the policy covers only "negligent – not intentional – acts"); *Golf Course Supt's Ass'n v. Underwriters at Lloyd's London*, 761 F. Supp. 1485, 1490 (D. Kan. 1991) ("It would be self-defeating to limit the definition of 'wrongful act' to negligent acts, but at the same time cover intentional errors or omissions").

omission." *Id.*, 2002 U.S. Dist. LEXIS 3674, at *13.  Oracle argues the same here.  *See* Pl. Br. at

11.  However, the *Grp. Voyagers* court found such construction unreasonable, stating:

> The Court is not persuaded by this logic, because the phrase would be
> ungrammatical without the comma, thus the comma serves the purpose of
> separating elements of a list. The comma's presence, therefore, cannot fairly be
> construed to weigh in favor of plaintiff's interpretation of "negligent act, error or
> omission." The Court finds, therefore, that "negligent act, error or omission"
> means "negligent act, negligent error, or negligent omission."

*Id.*

Here, while Oracle concedes that "negligent" modifies "act", "error", and

"omission" (Pl. Br. at 11), it maintains that these well-established principles (concerning the

interpretation of a phrase with a "negligent" initial modifier) do not extend to policy language

which includes additional nouns beyond "act, error or omission," such as "misstatement" or

"misleading statement." Pl. Br. at 11-12.   However, courts in other jurisdictions that have

interpreted strikingly similar language to that of Insuring Clause I.A (which includes the terms

"misstatement" and "misleading statement") have looked to courts interpreting the simple phrase

"negligent act, error or omission" for guidance, and have found that the word "negligent" also

modifies the additional terms "misstatement or misleading statement."

In *Employers Reins. Corp. v. Teague*, 1992 U.S. App. LEXIS 19294 (4th Cir. Aug. 14,

1992), the court interpreted a policy covering liability arising from any "negligent error,

omission, misstatement or misleading statement."  The insured argued that the phrase covered

any type of misstatement, including intentional misstatements.  The court disagreed, ruling that

"the adjective 'negligent' modifies every word in the series," and agreeing "with other courts

which have held, construing comparable provisions, that the adjective preceding a series of

nouns modifies every noun in the series." *Id.*, 1992 U.S. App. LEXIS 19294, at *5-6 (citing to

cases that have interpreted the phrase "negligent act, error or omission").   Similarly, in *Golf*

*Course Supt's Ass'n*, 761 F. Supp. at 1489, the court examined a directors and officers liability policy and concluded that coverage for any "negligent act, error, omission, misstatement or misleading statement" does not include intentional acts. *Id.* at 1490 (citing cases that interpret the phrase "any negligent act, error or omission"). The court held that the term "negligent" must modify every relevant term of the definition because "[i]t would be self-defeating to limit the definition of [the phrase] to negligent acts, but at the same time cover intentional errors or omissions." *Id.* The Court further reasoned:

> [M]isstatements and misleading statements *are* negligently made at times. A cause of action exists for negligent misrepresentation. Because the policy expressly excludes coverage of claims alleging dishonesty, it is quite consistent to construe the definition of wrongful act to cover only negligent misstatements or negligent misleading statements.

*Id.  See also Benefit Sys. & Servs.,* 2009 U.S. Dist. LEXIS 34213, at *15. Thus, Oracle's contention that AIGSIC could have drafted its policy language differently is of no import. Pl. Br. at 12.

        In light of these well-established principles, and reading Insuring Clause I.A in accordance with the meaning a lay person would attach to it, the only reasonable interpretation of Insuring Clause I.A is that the term "negligent" (the adjective preceding a series of nouns or phrases) modifies the terms "act", "error", "omission", "misstatement", and "misleading statement" (each noun or phrase in the following series), and thus does not cover intentional acts.

        Oracle's erroneous reading of Insuring Clause I.A contradicts the well-established principles mentioned above and would result in a strained and illogical interpretation of the Primary Policy, and create an insuring obligation virtually impossible for an insurer to underwrite. *See e.g.*, *Forest Meadows Owners Ass'n*, 2012 U.S. Dist. LEXIS 50911, at *17-18 (to conclude that the word "negligent" modifies only "acts" but not "error" or "omission" would

result in a strained and illogical interpretation of the policy in which coverage could conceivably extend to intentional, reckless or even ultrahazardous errors, omissions and breaches of duty as well as negligent acts, and would create an insuring obligation virtually impossible for an insurer to underwrite).

In addition, just as the policy in *Golf Course Supt's Ass'n* excluded coverage of claims alleging dishonesty, 761 F. Supp. at 1490, Exclusion A of the Primary Policy excludes, *inter alia*, dishonest conduct.  Therefore, it would be consistent to construe Insuring Clause I.A as covering only negligent misstatements or negligent misleading statements.

**B.  The Mere Existence of Exclusion A Cannot Create Coverage For Claims Expenses Where the Insuring Clause Is Not Triggered In The First Instance**

Oracle argues that the mere existence of Exclusion A in the Primary Policy implies that the Policy is not limited to coverage for negligent conduct (Pl. Br. at 12-13).  It is black letter law that "Exclusions in an insurance policy do not create coverage."  *Ray v. Valley Forge Ins. Co.*, 92 Cal. Rptr. 2d 473, 478 (Ct. App. 1999).  If the insuring clause does not cover a claimed loss, there is no coverage.  *Id.*  There is no need for a court to even consider policy exclusions to determine the existence of coverage, because exclusions serve to limit coverage granted by an insuring clause and thus apply only to hazards covered by the insuring clause.  *Id.*  An exclusion cannot act as an additional grant or extension of coverage.  *St. Paul Fire & Marine Ins. Co. v. Coss*, 145 Cal. Rptr. 836, 896 (Ct. App. 1978) (exclusion cannot act as an additional grant or extension of coverage); *Stanford Ranch v. Md. Cas. Co.*, 89 F.3d 618, 627 (9th Cir. 1996) (where there was no coverage under the insuring agreement for liability arising in contract, no need to examine the advertising injury exclusion because the exclusion cannot be used to extend or grant additional coverage for injury arising in contract).  In addition, "an exception to a policy

exclusion does not create coverage not otherwise available under the coverage clause." *Hurley Constr. Co. v. State Farm Fire & Cas. Co.*, 12 Cal. Rptr. 2d 629, 633 (Ct. App. 1992).

Here, the Primary Policy only provides coverage for negligent or unintentional conduct. *See* Point II.A., *supra*. The mere existence of Exclusion A or its exception cannot serve to extend or grant coverage for Claims Expenses where coverage for the alleged intentional misconduct does not otherwise exist under the Insuring Clauses.[6]

## III.  THE OFCA CLAIMS IN THE STATE ACTION COMPLAINT DO NOT ALLEGE NEGLIGENT OR UNINTENTIONAL CONDUCT

Simply put, the OFCA Claims allege that Oracle acted in "reckless disregard of the falsity of its statements," which does not trigger the Primary Policy's Insuring Clauses which only cover negligent and unintentional conduct. Cohen Decl., Exh. A, ¶¶ 215, 236, 243, 252, 257, 264, 272. Oracle's attempt to read "negligence" into both the OFCA and the State Action Complaint, when it does not exist in either, must fail.

First, Oracle's attempt to equate negligence with gross negligence for purposes of triggering coverage for the OFCA Claims under one of the Primary Policy's Insuring Clauses is unpersuasive due to its reliance on inapposite case law, *Safeco Ins. Co. of Am. v. Robert S.*, 28 P.3d 889 (Cal. 2001), and is entirely misplaced. *Safeco* involved ambiguous exclusion language and a reasonable interpretation of the exclusion that rendered coverage illusory, which is plainly not the case here. In *Safeco*, the California Supreme Court was not considering the meaning of the phrase "negligent act, error or omission, misstatement or misleading statement" as part of an insurance policy's coverage provision, which is at issue here. Rather, it was considering the

---

[6] The only other authority cited by Oracle, *Mirpad, LLC v. Cal. Ins. Guarantee Ass'n*, 132 Cal. App. 4th 1058, 1073 (2005), has no application here, where it simply recites a general insurance proposition that does not contradict this well-established principle, and does not address a purported carve-out to a fraud exclusion.

meaning of the phrase "illegal act" which was part of an insurance policy's exclusionary clause. *Id*. at 893.[7]  Based on its conclusion that the exclusionary word "illegal" was ambiguous, the court in *Safeco* held that "Drawing a distinction, as the Court of Appeal did, between negligent acts and grossly negligent acts exceeds the bound of construction by rewriting the policy.  The word 'illegal' is not a synonym for 'gross negligence.'"  *Id*.  Therefore, Oracle's attempt to read *Safeco* out of context is misleading.  Oracle also cites *Safeco* for its holding that a distinction between ordinary negligence and gross negligence would be inconsistent with Section 533 of the California Insurance Code.  *See* Pl. Br. at 14.  However, Section 533 is not at issue in this dispute, and has no bearing on whether the Primary Policy's Insuring Clause is triggered.[8]

Second, the OFCA Claims do not allege that Oracle acted negligently, but rather that it acted recklessly.  Therefore, Oracle's reliance upon various interpretations of Section 533,[9] in an effort to equate negligence with recklessness, is equally misplaced and not controlling.  The sole question at issue here is not whether Oracle acted "willfully" under Section 533, but whether Oracle acted "negligently" (which resulted in a failure of Oracle's Technology Products to perform the function or serve the purpose intended) in order to trigger coverage under the Primary Policy's Insuring Clause.  Thus, Oracle's citation to *Shell Oil Co v. Winterthur Swiss Ins. Co.*, 15 Cal. Rptr. 2d 815 (Ct. App. 1993) and *Downey Venture v. LMI Ins. Co.*, 78 Cal. Rptr.

---

[7] The court in *Safeco* concluded the "illegal act" exclusion was unenforceable because the phrase "illegal act" could reasonably be construed either broadly to mean an act prohibited by any law, whether civil or criminal, or more narrowly, to imply a violation of criminal law only.  *Id*. at 894.  The court noted that if the exclusion were to be read broadly, it could include even simple acts of negligence, because a violation of the duty to use care is a violation of law – and that this broad interpretation would render the promise of insurance illusory because the policy was supposed to defend and indemnify for injury resulting from negligence, but the exclusion could defeat that coverage. *Id*.

[8] In addition, Oracle's citation to *Siebert v. Gene Sec. Network, Inc.*, 75 F. Supp. 3d 1108, 1117 (N.D. Cal. 2014) is equally inapposite as it is interpreting language in a federal statute that is not at issue in this dispute.

[9] Section 533 provides, "[a]n insurer is not liable for a loss caused by the willful act of the insured; but he is not exonerated by the negligence of the insured . . . ."

2d 142 (Ct. App. 1998) (Pl. Br. at 14-15) has no bearing on whether the Insuring Clause is triggered as those cases merely support a finding that acts of gross negligence or recklessness do not rise to the level of being "willful" under Section 533.

For the same reasons, Oracle's reliance on *Office Depot, Inc. v. AIG Specialty Ins. Co.*, 722 F. App'x 745 (9th Cir. 2018) (Pl. Br. at 15-17), is misplaced.  In *Office Depot*, the Ninth Circuit held that the California Insurance Code did not preclude insurance coverage for claims under the California False Claims Act ("CFCA"), which requires only "'reckless[ness]' regarding the truth or falsity of the information in the claim, and does not require '[p]roof of specific intent to defraud.'"  *Office Depot*, 722 F. App'x at 746.  At best, *Office Depot* stands for the principle that "CFCA claims do not necessarily involve the type of 'willful' conduct required for preclusion under [California Insurance Code] section 533."  *Id*.  However, the mere reading together of the CFCA and the California Insurance Code, neither of which are at issue in this dispute (nor is there an analog of the California Insurance Code at issue here), does not place the OFCA claims here under the Primary Policy's Insuring Clause.

Simply because there are intermediate degrees of state of mind (*i.e.*, recklessly, knowingly, intentionally) that would not necessarily be "willful" under Section 533, does not mean that those degrees are sufficient to trigger coverage for "negligent" conduct under the Primary Policy's Insuring Clause.  *See Grp. Voyagers, Inc. v. Emplrs. Ins. of Wausau*, 66 F. App'x 740, 741 (9th Cir. 2003).  *Grp. Voyagers* concerned an employee benefits liability endorsement in a commercial general liability policy, which provided that the insurer will defend suits for losses "as a result of any negligent act, error or omission that occurs in the 'administration' of [the insured's] 'employee benefits program.'"  *Id*.  The Ninth Circuit stated that given the allegations in the underlying action and the undisputed evidence of the insured's

19

intention to deny retirement benefits to tour directors -- the underlying action created no potential for coverage so as to require a duty to defend. *Id*. The court found that because the underlying action complaints did not allege that the insured negligently or mistakenly misread its retirement plan, the insured's argument that its behavior was not "willful" for purposes of Section 533 is "*beside the point* because the question is not whether [the insured] acted 'wilfully'; the question is whether it acted negligently in administering the plan." *Id.* (emphasis added). Significantly, the Ninth Circuit further explained: "There are intermediate degrees of state of mind (*e.g.*, recklessly, knowingly, intentionally) that would not necessarily be 'wilful' under section 533 ('necessarily and inherently harmful') yet still are beyond a 'negligent act, error or omission' so as not to trigger a duty to defend." *Id.*

Here, like the underlying action complaints in *Grp. Voyagers*, the OFCA Claims do not allege that Oracle acted negligently. Rather, the allegations of the OFCA Claims expressly allege that Oracle made statements, demonstrations, or representations "with actual knowledge that they were false, with deliberate ignorance of their falsity, or with reckless disregard of their falsity." *See* Cohen Decl., Exh. A, ¶¶ 215, 236, 243, 252, 257, 264, 272. Thus, Oracle's contention that the OFCA Claims' allegations of "reckless" conduct would not be willful under Section 533 is "beside the point," because the relevant inquiry is whether Oracle acted negligently for purposes of triggering coverage under the Primary Policy's Insuring Clause. Similar to the Court's holding in *Grp. Voyagers*, the OFCA Claims allegations of "reckless" conduct are beyond a "negligent act, error or omission" and do not trigger coverage under the Primary Policy.

## IV.  AIGSIC HAS NO DUTY TO ADVANCE DEFENSE COSTS FOR "POTENTIALLY COVERED" CLAIMS

Oracle is not entitled to advancement of defense costs for any "potentially covered" claim that has "alleged" wrongful conduct.  Pl. Br. at 17.  The duty to advance claims expenses extends only to claims that are actually covered under the policy.  *See Jeff Tracy, Inc. v. U.S. Specialty Ins. Co.*, 636 F. Supp. 2d 995 (C.D. Cal. 2009); *Petersen v. Columbia Cas. Co.*, 2012 U.S. Dist. LEXIS 120033, 2012 WL 5316352 (C.D. Cal. Aug. 21, 2012).  Courts have declined to apply a "potential coverage" standard to the duty to advance defense costs where the policy at issue included conditions and exclusions fundamentally at odds with a potential coverage standard, including provisions that require the insurer's consent to legal fees incurred and provide for the allocation of covered and uncovered losses between the insured and insurer.  *See Jeff Tracy, Inc.*, 636 F. Supp. 2d at 1003–04 (finding that imposing a duty to pay all defense costs once a potential for coverage is shown runs contrary to the terms of the policy which provided for an allocation between covered and uncovered defense costs); *Petersen*, 2012 U.S. Dist. LEXIS 120033 at *27 (finding that where the policy provided that the parties must allocate defense expenses proportionally to covered and uncovered matters, the insurer is only obligated to advance expenses according to that allocation).

In *Jeff Tracy*, the court relied on the fact that the policy did not include a duty to defend, required the insured to obtain the insurer's consent before incurring defense costs, and allowed the insurer to allocate defense costs when the underlying claim involved both covered and uncovered loss.  *Jeff Tracy, Inc.*, 636 F. Supp. 2d at 1003–04.  The *Petersen* court similarly found that the potential coverage standard did not apply because the insurer's duty to advance

defense costs was subject to the same conditions. *Petersen*, 2012 U.S. Dist. LEXIS 120033 at *27.

Here, the Primary Policy does not contain a duty to defend, and the Primary Policy only provides for advancement of defense costs subject to the allocation of covered and uncovered claims: "Subject to payment of the Deductible as provided in Clause VIII. *and allocation pursuant to Clause II.B.* below, the Underwriters shall advance, on behalf of the Insureds, Claims Expenses which the Insureds have incurred prior to the final disposition of such Claim." Compl., Exh. A, § II.A (emphasis added).   The Primary Policy further provides "The Underwriters shall not be liable under this Policy for the portion of such amount allocated to non-covered costs, expenses or losses." *Id.*, § II.B.  Therefore, under California law, the Primary Policy only obligates the insurer to advance defense costs for claims that are actually covered.

Oracle's reliance on *Braden Partners* and *Royalty Carpet Mills* is misplaced.  In those cases there was no final disposition of the claims, which is not the situation in the instant action. *Cf. Braden Partners, LP v. Twin City Fire Ins. Co.*, 2016 U.S. Dist. LEXIS 180958 (N.D. Cal. Dec. 20, 2016); *Royalty Carpet Mills, Inc. v. ACE Am. Ins. Co.*, 2017 WL 4786107 (C.D. Cal. July 17, 2017).

Here, the plain terms of the Primary Policy only require AIGSIC to advance Claims Expenses *prior* to the final disposition of the Claim (*i.e*, prior to the Settlement of the State Action).  Oracle did not request reimbursement of Claims Expenses until *after* the Settlement of the State Action.

## V.   SEVERAL EXCLUSIONS PRECLUDE PARTIAL JUDGMENT ON THE PLEADINGS

Oracle seeks partial judgment on the pleadings that the OFCA Claims "fall within the scope of the insuring agreement" of the Excess Policy (Pl. Br. at 1).   Oracle's motion does not

address AIGSIC's affirmative defenses predicated upon policy exclusions that bar coverage for the OFCA Claims even if such claims properly triggered an Insuring Clause.  *See* Answer, Aff. Def. ¶¶ 3, 5, 6, 9 and 11 [Dkt. #26].[10]  The exclusions present, at a minimum, factual issues that are not properly  decided on a motion for judgment on the pleadings.  *See Barber v. RLI Ins. Co.*, No. 1:06-CV-630, 2008 U.S. Dist. LEXIS 104128, at *15 (N.D.N.Y. Dec. 22, 2008) (finding that judgment on the pleadings with respect to the application of an exclusion is unwarranted because plausible factual scenarios exist and material issues of fact remain).

Accordingly, at most, this Court may only determine whether the OFCA Claims fall within any Insuring Clause, and all issues regarding the application of these exclusions can only be determined on a more fulsome record upon completion of discovery.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that Plaintiff's motion for partial judgment on the pleadings be denied.

Dated:       New York, NY             Respectfully submitted,
             August 16, 2018

                                      **BRESSLER, AMERY & ROSS, P.C.**

                                      By: _____ */s/ Robert Novack*_____
                                              Robert Novack, Esq.
                                              Charles W. Stotter, Esq.
                                              Christina D. Gallo, Esq.

                                              17 State Street
                                              New York, NY 10004
                                              T: (212) 425-9300
                                              F: (212) 425-9337

--------------------------------------------------

[10]   Indeed, in its brief, apart from addressing Exclusion A, Oracle concedes that the "exclusions on which AIG relies are broad-based and would apply, if at all, to all causes of action in the State Action" (Pl. Br. at 11, n. 7).

*Attorneys for Defendant AIG Specialty Insurance Company (f/k/a Chartis Specialty Insurance Company)*

4967530